Theodore Kiendl, of New York City, for defendant Hoyt Moore.

## UNITED STATES v. JOHNSON et al.

### No. 11400.

District Court, M. D. Pennsylvania.

March 15, 1946.

SMITH, District Judge.

The indictment in this case, found by the grand jury on September 11, 1945, charges the defendants Albert W. Johnson, Donald M. Johnson, Miller A. Johnson, Albert W. Johnson, Jr., Jacob Greenes, John Memolo, Hoyt A. Moore, and others with a conspiracy to commit certain offenses against

the United States, in violation of Section 37 of the Criminal Code, 18 U.S.C.A. § 88. The plea in bar filed herein on behalf of the defendant Moore urges the dismissal of the indictment as to him on the ground that prosecution is barred by the statute of limitations, 18 U.S.C.A. § 582.

The indictment charges a continuous conspiracy which allegedly began in February of 1934 and ended in December of 1944. It appears, however, upon a reading of the indictment, that the alleged conspiracy embraced a number of criminal ventures interdependent as to several of the defendants but independent as to others. This is apparent upon close examination of the specific charges against the defendant Moore.

The indictment charges generally — and here we quote only the pertinent allegations:

"That heretofore, to wit, beginning on or about the first day of February, 1934, and continuing thereafter up to and including the 31st day of December, 1944. * * * Albert W. Johnson, Donald M. Johnson, Miller A. Johnson, Albert W. Johnson, Jr., Jacob Greenes, John Memolo, Hoyt A. Moore, * * *, the defendants herein, unlawfully, wilfully and knowingly did combine, conspire, confederate and agree together and with each other and with (others) * * * herein named as co-conspirators but not named as defendants, * * * to commit offenses against the United States, to wit, corruptly to endeavor to influence, obstruct, impede and corruptly to influence, obstruct and impede the due administration of justice in suits, controversies, proceedings, matters, actions, causes, receiverships, bankruptcies and criminal prosecutions brought and pending in and before the District Court of the United States for the Middle District of Pennsylvania; and to defraud the United States (a) of and concerning its governmental function of considering, determining and disposing of, by and through the judge of the District Court of the United States for the Middle District of Pennsylvania suits, controversies, proceedings, matters, actions causes, receiverships, bankruptcies and criminal prosecutions brought and pending in and before the District Court of the United States for the Middle District of Pennsylvania as the same should be considered, determined and disposed of according to law and justice; (b) of and concerning its right to have the lawful functions of the judicial power of the United States exercised and administered free from unlawful impairment and obstructions; and (c) of and concerning its right to the conscientious, faithful, disinterested and unbiased, judgment and determination of, and action by the defendant Albert W. Johnson as the judge of the District Court of the United States for the Middle District of Pennsylvania, free from corruption, partiality, improper influence, bias, dishonesty and fraud, * * *.

"That as said defendants and co-conspirators well knew, from the beginning of the conspiracy charged in this indictment and continuously thereafter up to on or about July 3, 1945, the defendant Albert W. Johnson was the senior judge of the District Court of the United States for the Middle District of Pennsylvania; and that at all times during this conspiracy the defendants Donald M. Johnson, Miller A. Johnson and Albert W. Johnson, Jr., were sons of the defendant Albert W. Johnson and the defendant Jacob Greenes was well acquainted with and was personally intimate with the defendants Donald M. Johnson, Albert W. Johnson, Miller A. Johnson, Albert W. Johnson, Jr. and John Memolo; that at all times mentioned herein the defendant John Memolo was an attorney at law duly licensed and admitted to practice in and before the District Court of the United States for the Middle District of Pennsylvania and was well acquainted with and was personally intimate with the defendants Jacob Greenes, Donald M. Johnson, Albert W. Johnson, Miller A. Johnson and Albert W. Johnson, Jr.

* * * * * *

"It was a part of said conspiracy that the defendant Jacob Greenes would hold himself out as personally acquainted with and personally intimate with the defendants Albert W. Johnson, Donald M. Johnson, Miller A. Johnson and Albert W. Johnson, Jr., and would represent to the aforesaid attorneys, receivers and trustees and referees in bankruptcy and to other persons to the grand jurors unknown, interested in suits, controversies, proceedings, matters, actions, causes, receiverships, bankruptcies and criminal prosecutions brought and pending before the defendant Albert W. Johnson in his capacity as judge of the District Court of the United States for the Middle District of Pennsylvania that by reason of such association and intimacy he could and would procure and obtain appointments, sentences, orders, decrees

and action favorable to said persons, corporations, parties, litigants, attorneys, receivers, and trustees and referees in bankruptcy in said suits, controversies, * * * receiverships, bankruptcies * * * brought and pending in and before the District Court of the United States for the Middle District of Pennsylvania on the part of the defendant Albert W. Johnson by virtue of the office, position, power and influence of the defendant Albert W. Johnson as judge of the District Court of the United States for the Middle District of Pennsylvania.

"It was a further part of said conspiracy, that, by reason of said association and intimacy the defendant Jacob Greenes would seek out and would be sought out by persons, corporations, parties, litigants, attorneys, receivers, and trustees and referees in bankruptcy interested in the aforesaid suits, controversies, proceedings, * * * receiverships, bankruptcies * * * brought and pending in and before the aforesaid District Court * * * for the purpose of having said defendants Donald M. Johnson, Miller A. Johnson, Albert W. Johnson, Jr. and Jacob Greenes procure action favorable to said persons, corporations, parties, litigants, attorneys, receivers and trustees and referees in bankruptcy in said suits, controversies * * *, receiverships, bankruptcies * * * by virtue of the office, position, power and influence of the defendant Albert W. Johnson as judge of said District Court * * *.

"It was a further part of said conspiracy that the defendants Jacob Greenes, Albert W. Johnson, Donald M. Johnson, Miller A. Johnson and Albert W. Johnson, Jr. would accept and receive and would agree to accept and receive sums of money and other presents, * * * and other security for the payment of money and for the delivery and conveyance of things of value * * *, from said persons, corporations, parties, litigants, attorneys, receivers and trustees and referees in bankruptcy.

"It was a further part of said conspiracy that the defendant Jacob Greenes would accept and receive and agree to accept and receive from said persons, corporations, parties, litigants, attorneys, receivers, and trustees and referees in bankruptcy, sums of money and other presents * * *, and other security for the payment of mon-

ey and for the delivery and conveyance of things of value * * *, directly and indirectly, and would give and turn over and agree to give and turn over to the defendants Albert W. Johnson, Donald M. Johnson, Miller A. Johnson and Albert W. Johnson, Jr., in whole or in part, said sums of money, and other presents * * *, and other security for the payment of money and for the delivery and conveyance of things of value, directly and indirectly.

\* \* \* \* \* \*

"It was a further part of said conspiracy that the defendant Jacob Greenes would, at divers times to the grand jurors unknown, accept and receive and agree to accept and receive from the defendant John Memolo, directly and indirectly, certain sums of money and other presents, * * *, and other security for the payment of money and for the delivery and conveyance of things of value, * * * and that the defendant Jacob Greenes would give and turn over and agree to give and turn over, said sums of money and other presents * * *, and other security for the payment of money and for the delivery and conveyance of things of value, in whole or in part, to the defendants Albert W. Johnson and Donald M. Johnson, directly and indirectly."

The specific charges against the defendant Moore, exclusive of those contained in the general allegations, are embodied in the following allegations:

"That, as said defendants well knew, during this conspiracy the defendant Hoyt A. Moore was an attorney and was of counsel for the Bethlehem Steel Corporation, a corporation incorporated under the laws of the State of New Jersey, and its subsidiary companies (hereinafter referred to as Bethlehem Steel Company), creditor, bondholder and purchaser of the assets of the Williamsport Wire Rope Company under a sale of foreclosure ordered by Albert W. Johnson as judge of the District Court of the United States for the Middle District of Pennsylvania.[1]

\* \* \* \* \* \*

"It was a further part of said conspiracy that the defendant John Memolo would represent and make known to the defendant Hoyt A. Moore, attorney for the

---

[1] This paragraph is paragraph 5 of the indictment and appears on page 3 thereof. It is to be noted that we have quoted it as though it appeared at the beginning of page 19. This was done to clarify the particular charges against the defendant Moore.

Bethlehem Steel Company, that the defendants Albert W. Johnson, Donald M. Johnson, Jacob Greenes and John Memolo were interested in and would accept and receive and agree to accept and receive, directly and indirectly, in the guise of fees and expenses of administration of the receivership of the Williamsport Wire Rope Company * * * sums of money and other presents, * * * and other security for the payment of money and for the delivery and conveyance of things of value * * *, in return for action favorable to the said Bethlehem Steel Company in suits, controversies, proceedings * * *, receiverships * * * brought and pending in and before the District Court * * *, that the said Bethlehem Steel Company, by and through and at the instance of its attorney, the defendant Hoyt A. Moore, would agree to give and turn over to and would cause to be given and turned over to the defendant John Memolo and to such persons as the said John Memolo would designate, directly and indirectly, and in the guise of fees and administration expenses of the Williamsport Wire Rope Company receivership, certain sums of money and other presents * * *, and other security for the payment of money and for the delivery and conveyance of things of value * * *; that the defendant Donald M. Johnson, John Memolo and Jacob Greenes would agree that the co-conspirators Martin Memolo, John W. Crolly and Edward J. Maloney would be appointed officers of the District Court of the United States for the Middle District of Pennsylvania in connection with the Williamsport Wire Rope case and that said Martin Memolo, John W. Crolly and Edward J. Maloney would agree to turn over to the said Donald M. Johnson, John Memolo and Jacob Greenes substantially all of the fees subsequently received by said Martin Memolo, John W. Crolly and Edward J. Maloney as said officers of said court; that by reason of their said appointment as officers of said court the said Martin Memolo, John W. Crolly and Edward J. Maloney would thereby become the persons to be designated as aforesaid by John Memolo to receive sums of money from the Bethlehem Steel Company by means of and through the defendant Hoyt A. Moore in the guise of fees and administration expenses of the Williamsport Wire Rope Company, pursuant to the above described agreement; that the defendants Donald M. Johnson and Jacob Greenes would induce the defendant Albert W.

Johnson as judge of the District Court * * * to appoint the co-conspirators Martin Memolo and John W. Crolly as officers of said Court in connection with the Williamsport Wire Rope case and to confirm the appointment of the co-conspirator Edward J. Maloney as an officer of said court in connection with said Williamsport Wire Rope case; that the defendant Albert W. Johnson would, and he did, in the appointments of the aforesaid Martin Memolo, John W. Crolly and Edward J. Maloney as heretofore alleged; that the said conspirators John W. Crolly, Martin Memolo and Edward J. Maloney would receive sums of money and other presents * * * and other security for the payment of money and for the conveyance and delivery of things of value * * *, from the Bethlehem Steel Company in the guise of fees and administration expenses * * *, and would give and turn over, in whole or in part, said sums of money to the defendants Albert W. Johnson, Donald M. Johnson, John Memolo, and Jacob Greenes, directly and indirectly.

\* \* \* \* \* \*

"It was a further part of said conspiracy that the defendant Albert W. Johnson would sit as judge of the District Court * * * in the Williamsport Wire Rope case * * * and in other suits, controversies, proceedings * * *, receiverships, bankruptcies * * *; and that the defendants Donald M. Johnson, Miller A. Johnson and Albert W. Johnson, Jr., would agree corruptly to influence and persuade said Albert W. Johnson as judge of said District Court * * * corruptly to render his individual judgment, * * * decision, opinion, order and decree in the aforesaid suits, controversies, proceedings, * * * receiverships, bankruptcies, * * * without regard to the merits thereof; and that the defendant Albert W. Johnson as judge of said District Court * * * would corruptly and without regard to the merits thereof, render * * * judgments, decisions, opinions, orders and decrees * * * in the aforesaid suits, controversies, proceedings, * * * receiverships, bankruptcies, * * * brought and pending before him."

It is our opinion that it is reasonably apparent upon the face of the indictment that the culpable participation of the defendant Moore in the alleged conspiracy was limited to the criminal venture therein identified as the Williamsport Wire Rope Com-

pany case. There is no charge, except in the general allegations of the indictment, that this defendant was either a party to or had knowledge of the other criminal ventures embraced within the alleged conspiracy. It is, in fact, admitted by the government in its answer that the "defendant Moore (was) not known to have participated further in any matter with the defendants in this indictment after January 1939, or *to have had any knowledge of such matters.*" (Emphasis by the Court).

The defendant Moore may have conspired with the other defendants, as the indictment avers, to "obstruct and impede the due administration of justice" in the Williamsport Wire Rope Company case. This, however, would not make him a party to the general conspiracy in the absence of a conscious participation in the general conspiracy. Cf. United States v. Falcone, 311 U.S. 205, 208, 61 S.Ct. 204, 85 L.Ed. 128; United States v. Lekacos, 2 Cir., 151 F.2d 170, 172, 173; United States v. Andolschek, 2 Cir., 142 F.2d 503, 507.

The statement of Judge Learned Hand in the last case, at page 507, of 142 F.2d, seems apposite. It was there stated: "It is true that at times courts have spoken as though, if A. makes a criminal agreement with B., he becomes a party to any conspiracy into which B. may enter, or may have entered, with third persons. That is of course an error: the scope of the agreement actually made always measures the conspiracy, and the fact that B. engages in a conspiracy with others is as irrelevant as that he engages in any other crime. It is true that a party to a conspiracy need not know the identity, or even the number, of his confederates; when he embarks upon a criminal venture of indefinite outline, he takes his chances as to its content and membership, so be it that they fall within the common purposes as he understands them. Nevertheless, he must be aware of those purposes, must accept them and their implications, if he is to be charged with what others may do in execution of them."

We may assume, for the purpose of this discussion, that the defendant Moore conspired with several of the other defendants to obstruct and impede the due administration of justice in the said case, as charged in the indictment. But, it is our opinion that this conspiracy, embraced within the general conspiracy, was as to him an independent criminal venture. It is

apparent upon the face of the record before the Court that the last act in furtherance of this conspiracy was committed in January of 1939. It necessarily follows that prosecution as to the said defendant is barred by the statute of limitations.

The plea in bar is sustained and the motion to dismiss the indictment is granted.