UNITED STATES v. JOHNSON
(two cases).

SAME v. MEMOLO.

SAME v. GREENES.
Nos. 9377–9380.

Circuit Court of Appeals, Third Circuit.
Argued. June 16, 1947.
Decided Aug. 21, 1947.

Rehearing Denied Sept. 29, 1947.
Writ of Certiorari Denied Jan. 12, 1948.
See 68 S. Ct. 355.

Chas. J. Margiotti, of Pittsburgh, Pa. (Raymond P. Campbell, of Scranton, Pa., and Samuel Goldstein, and V. J. Rich, both of Pittsburgh, Pa., on the brief), for appellants Miller A. Johnson and Donald M. Johnson.

John Memolo and Stanley F. Coar, both of Scranton, Pa., for appellant John Memolo.

Thomas D. Caldwell of Harrisburg, Pa., and J. M. Gronfine, of Scranton, Pa. (Caldwell, Fox & Stoner, of Harrisburg, Pa., on the brief), for appellant Greenes.

Max H. Goldschein, Val Hammack, and John J. O'Brien, Sp. Assts. to Atty. Gen. (Theron L. Caudle, Asst. Atty. Gen., and William L. Caraway, Atty., Department of Justice, on the brief), for the United States.

Before MARIS, GOODRICH, and KALODNER, Circuit Judges.

GOODRICH, Circuit Judge.

Ten defendants were indicted on the charge of a conspiracy [1] to obstruct the administration of justice.[2] The indictment was dismissed as to two of the defendants;[3] one died prior to trial; one was granted a severance because of illness; two were found not guilty; the remaining four were convicted,[4] sentenced, and have appealed to this Court. While a separate appeal is docketed for each appellant the majority

---

[1] "If two or more persons conspire either to commit any offense against the United States, or to defraud the United States in any manner or for any purpose, and one or more of such parties do any act to effect the object of the conspiracy, each of the parties to such conspiracy shall be fined not more than $10,000, or imprisoned not more than two years, or both." Act March 4, 1909, 35 Stat. 1096, 18 U.S.C.A. § 88.

[2] "Whoever corruptly * * * shall endeavor to influence * * * any * * * officer in or of any court of the United States * * * in the discharge of his duty, or who corruptly * * * shall influence, obstruct, or impede, or endeavor to influence, obstruct, or impede, the due administration of justice therein, shall be fined not more than $1,000, or imprisoned not more than one year, or both." Act March 4, 1909, 35 Stat. 1113, 18 U.S.C.A. § 241.

[3] United States v. Johnson et al., D.C. M.D.Pa.1946, 65 F.Supp. 42; United States v. Johnson et al., D.C.M.D.Pa. 1946, 65 F.Supp. 46.

[4] United States v. Johnson et al., D. C.M.D.Pa.

of the points raised are common to the cases of all and this opinion will dispose of all four appeals.

The theory of the Government's case was that all the defendants were engaged in a continuing general conspiracy to debase the administration of justice. The conspiracy allegedly operated over a number of years and the prosecution sought to prove that the conspiracy existed by a showing of misconduct by the defendants with reference to specific pieces of litigation in the Middle District of Pennsylvania. The prosecution is not against any defendant for misconduct in a particular case however, nor is it for conspiring to do something illegal in an individual case. The theory is that a general conspiracy existed, which lasted over a period of time, and which is shown by what the parties did regarding the individual lawsuits. In some instances more than one of these cases was in the Court at one time. In others, only one such case was pending and sometimes there was a period during which the record is silent as to activities of the alleged conspirators.

[redacted] We think there was sufficient evidence to support the Government's contention of a continuing conspiracy. The statute of limitations, therefore, runs only from the time of the last overt act. United States v. Kissel, 1910, 218 U.S. 601, 31 S.Ct. 124, 54 L.Ed. 1168; Brown v. Elliott, 1912, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136; Culp v. United States, 8 Cir., 1942, 131 F.2d 93. The period of limitations for the prosecution on a conspiracy charge is three years.[5] The indictment in this case was returned on September 11, 1945. The conspiracy existed over a period of fourteen years. Some of the acts necessarily occurred earlier than September 11, 1942, but these acts could be proved to show the existence and continuance of the conspiracy even though there could have been no prosecution for any substantive offense charged as an overt act. Shaw v. United States, 5 Cir., 1930, 41 F.2d 26. Appellants concede that this is correct but say that there are no overt acts proved which occurred within the period of the statute of limitations. If this is true, the point is of decisive importance. But an examination reveals certain acts which were committed after the crucial date. One was the sending of the $350.00 check by the defendant Greenes' brother, at Greenes' direction, to Donald Johnson. This occurred in October, 1942. Another was the filing by one Michael of the final account in the Central Forging case on July 9, 1943.

[redacted] In this connection it is to be borne in mind that it is not necessary that an overt act in furtherance of conspiracy necessarily be a criminal act.[6] Indeed, an innocent act by a third party, if caused by previous act or contact on the part of one of the conspirators, would be enough.[7] Therefore, the filing of the trustee's report above referred to, while itself a perfectly legal act, may be an overt act in furtherance of a conspiracy if such filing is part of the general plan of the conspirators with regard to the subject-matter in which the report is filed. Since Donald Johnson is to have the benefit of the Trial Judge's instruction that nothing which occurred that was connected in any way with the Central Forging case should be considered in determining his guilt, Michael's filing in the Central Forging case cannot be used against Donald Johnson. But the $350.00 check transaction is certainly evidence admissible against Donald Johnson and it was within the jury's province to believe that such transaction had as its purpose the covering up of an illegal transaction rather than a payment of an attorney's fee as Johnson testified. The Koppleman and Kizis incidents were overt acts which also occurred after September 11, 1942. These incidents, proved only by the admissions of Greenes and Memolo before the Grand Jury, are, of

---

5 Act Dec. 27, 1927, 45 Stat. 51, 18 U.S.C.A. § 582.

6 Braverman v. United States, 1942, 317 U.S. 49, 63 S.Ct. 99, 87 L.Ed. 23; Pierce v. United States, 1920, 252 U.S. 239, 40 S.Ct. 205, 64 L.Ed. 542; United States v. Rabinowich, 1915, 238 U.S. 78, 35 S.Ct. 682, 59 L.Ed. 1211.

7 Cf. Hyde v. United States, 1910, 35 App.D.C. 451, affirmed 1912, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114, Ann. Cas.1914A, 614; see 2 Wharton's Evidence in Criminal Cases § 704 (1935).

course, limited to those two defendants. But as to them they tend to show that the conspiracy still existed and do constitute overt acts.

The other major question involved in this appeal is whether there was sufficient evidence to sustain the verdict. The verdict necessarily involved a finding that the charge of a general continuing conspiracy was upheld and that the defendants found guilty were involved in it. The first point the appellants make in this connection is that the prosecution's whole case falls to the ground because the person alleged to have been the most important figure in the conspiracy and to whom all the acts of the other defendants headed, was acquitted. This defendant was a former District Judge. At the trial the presiding Judge pointed out to the jury that "the heart and core of the indictment in this charge" is that this Judge entered into an understanding with others that he would be influenced in his administration of the law by other considerations than the law and the facts brought before him.[8] Nevertheless, the jury, thus apprized of the importance of this one figure in the alleged conspiracy, acquitted him, but convicted others who are said by the defendants to be of lesser importance.

There are two answers to the argument that the fact of this acquittal causes the whole case to collapse. One is that the jury could reasonably have found that persons around the Judge were conspiring to obtain illegal advantages, but that it did not necessarily follow that the Judge, himself, was concerned in the transactions. Cf. Joyce v. United States, 8 Cir., 1946, 153 F.2d 364. Appellants' contention that only court officials are capable of corruptly administering justice and that, therefore, persons cannot be guilty of a conspiracy to procure its corrupt administration unless the court official is corrupt is untenable. Cf. Glasser v. United States, 1942, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680. The second point is that the action of the jury in convicting some alleged conspirators and acquitting others is not required to be consistent in order to be legal.[9] If the defendants had been tried separately and separate juries had convicted some and acquitted others, the argument the defendants make on this point would be deprived of practically all its force. We know that one jury does not have to reach a result consistent with what some other jury has reached. Nor is the same jury required to be consistent in order to be effective. As Judge Learned Hand pointed out: " * * * the appellants have no vested right in the punishment of their fellows, however guilty. * * * we have nothing to do with the rational enmeshing of the two findings; * * * each need only bear its own defects." United States v. Austin-Bagley Corporation, 2 Cir., 1929, 31 F.2d 229, 233, certiorari denied 1929, 279 U.S. 863, 49 S. Ct. 479, 73 L.Ed. 1002. The case as to each one of the convicted defendants, therefore, must stand or fall according to its own strength or weakness, not because of what the jury did to some other defendant.[10]

---

[8] He did, however, point out in another part of the charge that it would be possible to acquit the Judge and yet find the others guilty. The jury apparently followed this instruction.

[9] The cases so holding are numerous. See e. g. United States v. Hare, 7 Cir., 1946, 153 F.2d 816, certiorari denied 1946, 328 U.S. 836, 66 S.Ct. 983, 90 L. Ed. 1612; Baxter v. United States, 6 Cir., 1930, 45 F.2d 487.

[10] Much of the evidence introduced could be used only against some of the defendants. The Grand Jury testimony which could not be used against the Judge nor his sons indicates the agreement among all the defendants to obstruct justice. The jury was carefully instructed not to use evidence against all defendants when that evidence was accepted only as to certain ones. It is, therefore, possible that the Judge's participation to the jury's satisfaction could be established only by evidence which was incompetent as to him. Yet when the jury was considering the issue of his participation as to other defendants this evidence could be used. Defense counsel repeatedly asked for such instructions and directions to the jury. The jury apparently followed the instruction and excluded from their mind the evidence which was incompetent only as to one particular defendant when considering his guilt or innocence.

The case was complicated for the jury and for us by the fact that a great deal of important testimony, due to the various exclusionary rules of evidence, was not available against all of the defendants. Thus, some very damaging testimony of previous statements to a Grand Jury was available only as against defendants Memolo and Greenes. Again, defendant Donald Johnson had previously been acquitted of charges growing out of one of the particular incidents which was part of the Government's case. He was entitled to such protection as the law gives him by the fact of that acquittal. His claim that he did not receive this protection will be considered later in the course of this opinion. The jury had to consider the testimony given in the course of a long trial and its different bearing upon different defendants. In this it was aided by the charge of the Trial Judge which, in this respect, was so clear that it has escaped criticism on the part of the appellants.

■ No desirable function is served by reiteration of testimony with regard to those defendants as to whom we conclude the evidence was sufficient to bring them into the general conspiracy charge. As to the appellants, Memolo and Greenes, the evidence is not only clear, but overwhelming. There is sufficient evidence in the record to permit the introduction of their admissions made before the Grand Jury; once these admissions are considered we virtually have a confession of guilt. As to the defendant Donald Johnson, there is not so strong a case because the damaging Grand Jury admissions were available only against those who made them, that is, the defendants Memolo and Greenes. Nevertheless, we think there is sufficient testimony so that the jury could have found, as they did, that the defendant Donald Johnson was included in the conspiracy.

With regard to the defendant Miller Johnson the case is much more difficult.

There was testimony that indicated participation in one transaction among those charged to involve irregularities. It was to the effect that Miller Johnson approached one Townsend, who had been appointed co-receiver of the Williamsport Wire Rope Company and asked Townsend to pay half his monthly fees to Albert Johnson, Jr., and that the payments were so made. There are only two other incidents which appeared in the evidence. One was told by Judge Johnson's Secretary, to the effect that Miller Johnson came into the Judge's office while the latter was examining a financial statement which the Secretary had prepared for the Judge. The latter is alleged to have said to his son that "We would have to account in some way for this money." The third piece of testimony is to the effect that Miller Johnson and his brother, Donald Johnson, had dinner with one Michael in May, 1944,[11] On this occasion they were alleged to have told Michael that they had been subpœnaed and were being investigated and asked Michael whether he had been.

This is all which a careful combing of the record by Government counsel has produced concerning Miller Johnson. We very much desire to refrain from invading the province of a jury, whose business it is to find facts. Nevertheless, in this case, it is our obligation to state that the conclusion of guilty in Miller Johnson's case is not warranted by the testimony taken in the most favorable light for the Government. The participtaion in the Williamsport Wire Rope case, if the allegations were believed, has substance. But Miller Johnson was not being prosecuted for anything irregular he may have done in that case. He was being prosecuted for participation in a continuing conspiracy to obstruct justice and the learned Trial Judge told the jury that the fact that a defendant participated in one incident was not enough to prove him an actor in the play as a whole.[12]

---

11 The Judge at the end of the series of questions which elicited the testimony limited its introduction to Donald Johnson on the ground that the meeting occurred after the investigation by the F.B.I. and therefore the admissions were binding solely on Donald Johnson. Thus we actually have only two occa-

sions in which Miller Johnson's name appears in the testimony.

12 "If you find that anyone of the defendants charged in this case was really only connected with one or two of the subsidiary conspiracies which might be alleged in connection with some facts which are brought into this case, and

The second two incidents seem to us completely trivial and not to prove anything. This is a conclusion and not a reason. But if the conclusion is not supported by the recital of the incidents set out above, we do not think adding words as argument in support of our conclusion will give it any more weight.

█ The result of the above discussion is that we decide that the evidence was insufficient to establish Miller Johnson's participation in the conspiracy charged. Therefore, as to him, there must be a reversal with directions to enter a judgment of acquittal in his favor. Other reasons alleged by him as grounds for a new trial need not, in his case, be considered.

A number of other points have been raised as grounds for a new trial because the learned Trial Judge, it is argued, committed error. It is no criticism of counsel that we characterize some of them as trivial. It is counsel's business to bring before the Court all points that can be made on behalf of his client and the Court's business to consider them. We shall dispose of the various points briefly.

█ 1. Several of the appellants complain about the charge of the Trial Judge concerning character evidence. On this point the Judge charged as follows: "The evidence of the good reputation of a defendant for honesty and being a law-abiding citizen is admissible in this case. It is substantive evidence and is entitled to weight in your determination. The Government is bound to prove the charge as against any defendant beyond a reasonable doubt, based on all the evidence. If you find that the charge has so been proved as against any defendant, giving weight to the substantive evidence of good reputation, you may find him guilty.

"In this connection, you may consider that persons who may have the best reputations in their communities have heretofore been known to have committed crime.

While, therefore, it is your duty to weigh and consider such evidence, you are not bound to find the defendant innocent simply because he possessed a good reputation before indictment. If after considering all the evidence, including the evidence of good reputation, there is reasonable doubt as to the guilt of the defendant existing in your minds, you may acquit him."

█ We think this charge was correct and within the decision of this Court in United States v. Quick, 3 Cir., 1942, 128 F.2d 832 and the later reiteration of the doctrine of that case in United States v. Frischling, 3 Cir., 1947, 160 F.2d 370.

█ 2. Complaint is made concerning the admission of certain parts of the Grand Jury testimony containing admissions by appellants Greenes and Memolo. It is said that all of the Grand Jury minutes should have been given to the jury if any were. No error was committed in this matter. What was given to the jury was consecutive testimony, not isolated excerpts of what someone said, pulled out of its context. There is no reason why the record should have been unduly cluttered with all the Grand Jury testimony. What was necessary and what the cases cited by the appellants require, is that statements made are given sufficiently in their context so that the jury may have an accurate notion of what was said and under what circumstances. Schoborg v. United States, 6 Cir., 1920, 264 F. 1; Jaquith v. Smith, 1942, 112 Vt. 353, 24 A.2d 341; Jones v. Krambeck, 1940, 228 Iowa 138, 290 N.W. 56. This principle was complied with.

█ 3. Appellants maintain that the Trial Court erred in failing to declare a mistrial because of certain remarks made by attorney for the prosecution in his rebuttal. These remarks concerned a senior partner in a well-known New York law firm who had been a witness. The defense referred to this witness as a man of "fine qualities," "an example of an honest man

---

which, it is true might involve some of the same conspirators alleged and named here, you would not on that account find such defendant guilty in this case upon such evidence and such circumstances alone." The fact that the Government only alleged participation in only one of

the eleven cases was the ground for dismissal of the indictment as to Hoyt A. Moore and Charles Korman. United States v. Johnson et al., D.C.Md.Pa.1946, 65 F.Supp. 46; United States v. Johnson et al., D.C.M.D.Pa.1946, 65 F.Supp. 42.

and good fellow," and "a fine old gentleman." The prosecution, on the other hand, referred to the witness as a man "who goes to Europe for his holidays," and as "that conspirator," and "criminal conspirator." We make no comment for or against the witness. We do hold, however, that this interchange of evaluations concerning him was, at most, irrelevant entertainment for the jury and gives not the most remote basis for asking for a new trial.

4. Appellant Donald Johnson had been indicted and tried for alleged participation in one of the cases used by the prosecution in this case to help establish the general conspiracy. Donald Johnson was acquitted by the jury in that prosecution. He contended that he was entitled to the benefit of the rule of res judicata with regard to that acquittal and that the Trial Court ruled that the acquittal was of no consequence.

We think that this characterization of the attitude of the Trial Judge on the matter does not accurately state his position. He not only had the significance of the acquittal in mind, but he told the jury about it clearly and forcefully. He said in part: "But the acquittal in that case, since it was of a different conspiracy, cannot be used to require that you acquit Donald Johnson in this case. However, in order to be sure that the Court protects the defendent in this regard, and that you as jurors protect him in this regard, and to be sure that we shall not do what might be done in this case, try him twice on the same set of facts, which is one of the things that can't be done under the Constitution of the United States, the Court charges you that you do not retry as to Donald Johnson the charges in the indictment, which is in evidence and which I have outlined to you, and specifically, that you shall not consider in this case as to him the overt acts which are mentioned in that Central Forging Company indictment. You will find them listed, there are five of them, and it includes the receiving of two thousand five hundred dollars. As I say, I don't think that fact was squarely an issue in that case, but I want to be perfectly sure that neither you nor this Court retry any defendant on the ground that he has been acquitted. In that regard you pay no attention to those specific acts in the Central Forging case as regards Donald Johnson. However, all of the other matters in evidence are also as to him."

Defendants have cited excerpts from decisions stating general principles of res judicata [13] in the law. There is no dispute as to the correctness of the general propositions there stated. But we do not find them helpful in considering the bearing of the fact of the acquittal in the earlier case on the charge of the conspiracy here. We think what the Trial Court did was adequate to protect the rights of the defendant.

5. Appellants complain that the Judge did not charge in terms that the jury must find the date of the beginning of this conspiracy and the date of its end. Instead he said: "As to time, it is not necessary that the Government prove that the crime of conspiracy charged was committed exactly within the limits laid in the indictment, that is, February 1, 1934, to December 31, 1944. Nor is it necessary to prove that any of the overt acts were committed at the time in which they are specified in the indictment. It is sufficient if a conspiracy be found beyond a reasonable doubt that it continue in existence and force and validity for a period of time within three years of the finding of the indictment, which was the 11th day of September, 1945. If such a conspiracy be found and an overt act as charged in the indictment be found to have been done within three years of the finding of the indictment, that would be sufficient."

We think the complaint which the defendants make of the charge is predicated upon the notion that the agreement in a conspiracy is something that is formal, as a contract to buy and sell land. Of course, it is not. In most of these conspiracy cases the agreement is a tacit one and is shown by what the parties do together, not by formal promises interchanged among them. United States v. Direct Sales Co., D.C.S.C. 1942, 44 F.Supp. 623, affirmed 1943, 63 S.

---

[13] The problem here involved is actually one of collateral estoppel rather than res judicata. See Scott, Collateral Estoppel by Judgment, 56 Harv.L.Rev. 1 (1942).

Ct. 1265, 87 L.Ed. 1674, 319 U.S. 703; United States v. Holt, 7 Cir., 1940, 108 F.2d 365, certiorari denied 1940, 309 U.S. 672, 60 S.Ct. 616, 84 L.Ed. 1018; Babb v. United States, 8 Cir., 1929, 27 F.2d 80. Its end is shown either by the fact that they no longer act together or that they are unable to do so because the law has caught up with them. We find nothing amiss with regard to the Trial Judge's charge here.

6. The appellant Memolo urged, at some length, that he was deprived of his constitutional rights by the examination of certain papers and books. He submitted these books to a Grand Jury before which he was summoned under subpœna. He did not, at the time, point to anything in them which created personal privilege in his behalf against self-incrimination. The privilege is personal and it is clear that unless the party, himself, is being called upon to incriminate himself the fact that someone else may be incriminated is not sufficient to exclude evidence. From the examination of these records things were learned which were made the basis of evidence against Memolo later. We agree with the Trial Judge, however, that there was no invasion of his constitutional rights.

7. Various other complaints are made by the defendants about the conduct of the trial. We think they are not well taken. The Trial Judge was strict, it is true, but he was fair. Certain instructions asked for were refused. But the Judge's charge was a most thorough one and covers over a hundred pages in the Appendix before us. It deals with every phase of the case. The fact that certain other requests on matters not strictly relevant to the case were refused is not, we think, reversible error. It is not our notion of the appellate process that the Trial Judge's charge should be sifted through bolting cloth to find possible error. The argument that his instructions usurped fact finding functions of the jury we think is without foundation.

Our conclusion is that as to three of the appellants there must be an affirmance. As to appellant, Miller Johnson, for reasons above stated, there must be a remand with directions to enter judgment of acquittal.