UNITED STATES of America

v.

John P. GILBOY, Jr., William J. Green, Jr., Joseph Rochez, Frederick J. Raff, Robert W. Brown, John B. Kemmel, Herbert J. McGlinchey.

Crim. No. 12380.

United States District Court
M. D. Pennsylvania.

Feb. 6, 1958.

**446**

Oliver Dibble, Sp. Asst. to Atty. Gen., Robert J. Hourigan, U. S. Atty., Scranton, Pa., for U. S.

Russell J. O'Malley, Joseph P. Brennan, Scranton, Pa., for defendant, John P. Gilboy, Jr.

John P. Walsh, Philadelphia, Pa., James O'Brien, Scranton, Pa., for defendant, William J. Green, Jr.

J. Alfred Wilner, Pittsburgh, Pa., James W. Scanlon, Scranton, Pa., for defendant, Joseph Rochez.

Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for defendant, Frederick J. Raff.

John M. McNally, Jr., Philadelphia, Pa., for defendant, Robert W. Brown.

Jacob Kossman, Philadelphia, Pa., Joseph E. Gallagher, Scranton, Pa., for defendant, John B. Kemmel.

Robert C. Duffy, Philadelphia, Pa., John W. Bour, Scranton, Pa., for defendant, Herbert J. McGlinchey.

MURPHY, Chief Judge.

Defendants, indicted for conspiracy to defraud the United States, 18 U.S.C.A. § 371, move to dismiss the indictment; Fed.Rules Crim.Proc. Rule 12(b) (2), 18 U.S.C.A.;[1] Green, Rochez and Raff for a

---

1. Contending that it does not allege sufficient facts to charge a violation of § 371 (all but Kemmel); inform defendants of the nature and cause of the accusation (Green and McGlinchey); state with reasonable certainty what acts were intended to be carried out so that defendants could determine whether the object was a crime against the United States, and the court whether the averments would support a conviction (Green and McGlinchey); it is vague and indefinite: Brown; (Raff adds contradictory), as to the manner, means and extent (Green, McGlinchey, Rochez); it does not inform as to how, when, where (Rochez adds what persons) and under what circumstances they conspired (Green, Raff and McGlinchey); it is duplicitous (all but Raff and Brown); the Grand Jury was not properly constituted (Gilboy and Rochez); jurisdiction and venue are lacking (Gilboy); the Statute of Limitations has expired (Gilboy, Rochez and Brown); it is an attempt to harass, embarrass and intimidate him (Gilboy);

to wear him down by multiple charges (Kemmel); and contradicts an earlier indictment No. 12789 (Gilboy).

Gilboy, Rochez and Raff assert that they were subpoenaed, appeared, were sworn, and testified before the Grand Jury which later indicted them; the United States Attorney did not advise them as to their rights as to self-incrimination; that they were a primary target of the inquiry (Rochez and Raff); that the prosecutor did not warn him that he was seeking an indictment against him (Rochez); the indictment was obtained upon such improperly secured testimony (Gilboy); that they had not waived such rights (Gilboy and Raff). All three contend that by being subpoenaed and not properly advised they were denied rights under the V Amendment and therefore the indictment against them cannot stand.

Gilboy urges that the Grand Jury did not consider the facts in a calm and unprejudiced atmosphere, that their findings were the result of contemporary

bill of particulars, Rule 7(f); Green, Raff and Brown for a severance, Rule 14; Green to transfer the place of trial, within the district, from Scranton to Harrisburg, cf. Rule 19; Gilboy, Green, Rochez and Raff for discovery and inspection, Rule 16; supplemented by Gilboy and Green with a subpoena duces tecum, Rule 17(c); Raff for a copy of his Grand Jury testimony, Rule 6(c); Rochez (with four supporting affidavits) to take testimony in support of his motion to dismiss. Rochez Bros. Inc., Specialty Steel Products Inc., Consolidated Construction Co. of New Jersey, each petitioned for return of their corporate records. The government moved to quash the subpoenas; [2] to impound the corporate records.

■ A Grand Jury duly impaneled [3] and sworn, inquiring into whether any violations of Federal Criminal laws occurred in the construction, by the Department of the United States Army and the Army Corps of Engineers, of the Tobyhanna Signal Depot, a military installation, in this district, [4] after many months of investigation, indicted all seven defendants, [5] charging them with con-

publicity, highly prejudicial and inflammatory; Rochez that while the Grand Jury was in session the United States Attorney made improper disclosures to unauthorized persons; that during a Grand Jury "session" on April 19, 1956, unauthorized persons were present.

Finally Brown: There is no allegation of an agreement by him with any other defendants to do an illegal act or a lawful act in an unlawful manner or with others who committed overt acts; the overt acts are unrelated and are not alleged to be part of one conspiracy; that he is charged only with the commission of two overt acts which were not unlawful, not done in furtherance of an unlawful purpose, and therefore conspiracy to do so is not an indictable offense.

2. To which Gilboy filed an answer.

3. Selecting the panel from the NE counties of a thirty-two county district pursuant to 28 U.S.C.A. § 1865 was proper. United States v. Titus, 2 Cir., 1954, 210 F.2d 210, at page 212; United States v. Gottfried, 2 Cir., 1948, 165 F.2d 360, at pages 363–365. The rationale of In re Petition for Special Grand Jury, D.C. M.D.Pa.1931, 50 F.2d 973, is not contra.

4. Par. 1. The United States through the Department of the Army and the Corps of Engineers entered into prime contracts: (a) March 5, 1951, Gilboy, O'Malley and Stopper as Architect-Engineer, designs and specifications, supervision of construction; (b) June 20, 1951, Rochez Bros. Inc., grading and dredging ground site; (c) November 30, 1951, Consolidated Construction Co., to build warehouses; (d) May 27, 1952, Merritt, Chapman & Scott, utility systems, buildings and site improvements; (e) S. G. Mastriani Co., June 27, 1955, coal storage yard, December 15, 1955, al-

terations and additions to outside utilities, site improvements, December 16, 1955, modifications to boiler plant. Consolidated subcontracted: (f) January 4, 1952, plumbing, Gus Weinberg; (g) March 7, 1952, painting, John B. Kemmel Inc.; (h) March 10, 1952, electrical, Harris Electrical Co. Merritt, Chapman & Scott; June 16, 1952, plumbing and heating to Frederick Raff Co.; June 19, 1952, painting and finishing, John B. Kemmel Inc.

As Architect-Engineer they were employees and persons acting for and on behalf of the United States and the Corps of Engineers, an agency thereof; they had a duty to inspect approve or disapprove the actions of inspectors under them, recommend acceptance or rejection of construction, assure the work was done in accordance with approved drawings and specifications, and to report thereon to the Contracting Officer of the Corps of Engineers (Par. 12 to 22 incl).

For services (a) they received $1,200,-351.20; estimated price (b) $2,899,579.-50; contract price: (c) $4,670,045, (d) $16,353,282.41, (e) $73,700, $87,835,. $88,310, (f) $133,866, (g) $90,000, (h) $421,000, (i) $2,660,756.

5. Gilboy was a partner, Gilboy, O'Malley and Stopper; president, stockholder, Gilboy and O'Malley, Consulting Engineers, Inc.; owned and controlled John P. Gilboy Co., Ralph E. Weeks Co. of Delaware, heating, ventilating, refrigeration, mechanical, sanitary and electrical equipment; a financial interest in Du-Ross-Anderson Co., plumbing and heating supplies and equipment. Rochez: president, stockholder Rochez Bros. Inc., heavy construction, excavating and grading ground surfaces, vice president, stockholder, Specialty Steel Products Inc., designing, manufacturing and fabricating iron and steel products. Brown:

spiracy to defraud the United States,[6] described in great detail the modus operandi [7] and recited thirty-nine overt acts (two or more by each defendant, many of them in this district) to effect the object of a conspiracy.[8]

president, principal stockholder, Consolidated Construction Co. Inc., Consolidated Construction Co. of N. J., general construction. Kemmel: president, principal stockholder, John B. Kemmel Inc., general painting, principal office, Philadelphia, Pa. Raff t/a Frederick Raff Co., plumbing and heating construction, principal place of business, Hartford, Connecticut. Green represented the Fifth Pennsylvania Congressional District, member of the House Armed Services Committee, owner Wm. J. Green Insurance Agency of Philadelphia (Pars. 2 to 11, 20). McGlinchey was on a number of the defendants' payrolls and involved in money transactions. An indictment may include the known and unknown. United States v. Harrison, 3 Cir., 1941, 121 F.2d 930, at page 934.

6. Par. 23. On or about January 15, 1951, continuing up to and including the date of the indictment at Tobyhanna and Scranton in this district, and within the jurisdiction of this court; at Philadelphia, Pa., Hartford, Conn., and at divers other places to the Grand Jury unknown, all seven defendants, "unlawfully, fraudulently and maliciously, did wilfully, knowingly and feloniously, combine, conspire, confederate and agree together and between and amongst themselves, and with Stopper, hereinafter designated and called a co-conspirator, and with divers other persons to the Grand Jury unknown, to defraud the United States":
(a) By the use of frauds and deceptions practiced on the Department of the Army and the Corps of Engineers to obtain contracts for the designing and supervising, constructing and supplying facilities at the Depot; (b) By impeding, impairing, defeating and obstructing the lawful functions of the Department and the Corps of Engineers in the inspection and testing of designs, construction and supplies by and through the Architect-Engineer, Resident Engineer, inspectors and representatives of the Department and Corps of Engineers. (c) By circumventing and avoiding contract standards and specifications by means of false and fictitious tests, the use of devices and contrivances designed to prevent honest and accurate tests, and by other tricks, schemes, devices and concealments in the manner and by the means hereinafter set forth. (d) By depriving the government of its right and governmental function: of negotiating, entering into, awarding, performing, modifying, terminating, and settling contracts for the designing and supervising of construction and for the construction and supplying of facilities at the Depot. (e) Of assuring for the protection of the United States that all work at the Depot was done in accordance with approved drawings and specifications and of negotiating, entering into, awarding, performing, modifying, terminating and settling contracts for the work that was done at the Depot; and to other matters and things to which the United States was a party and in which it was directly and indirectly interested before the Department through and by means of its officers and employees in the office of the Architect-Engineer and of the Corps of Engineers, unhindered, unhampered, unobstructed and unimpaired by the exertion upon said officers, representatives and employees of dishonest, unlawful, corrupt, improper and undue pressure and influence; (f) To the lawful functions and duties of defendant Green in his official capacity as a Member of Congress and of the House Armed Services Committee, exercised, performed and administered, free from unlawful impairment, obstruction, corruption, partiality, improper influence, bias, dishonesty and fraud; (g) by depriving the government of its rights to the conscientious, loyal, faithful, disinterested and unbiased services, decisions, actions and performance of his duties by defendant Green in his official capacity as a Member of Congress and of its Armed Services Committee, free from corruption, partiality, improper influence, bias, dishonesty and fraud in dealing with the Corps of Engineers in said contracts and other matters pending before them, resulting from his personal and pecuniary interest in any contracts in which the United States was directly and indirectly interested by reason of the aforsaid Prime and Subcontracts.

7. In Pars. 24 to 37 incl., the indictment states it was part of the conspiracy that in matters within the jurisdiction of the Corps of Engineers, certain oral and written false, fictitious and fraudulent statements and representations, including forged documents, i. e., an "Architect-Engineer Questionnaire" would wilfully and knowingly be made and caused to be made by Gilboy and Stopper, and the questionnaire presented to the Department and to the Office of the Chief Engineer, and thereby wrongfully and by trick and artifice the Architect-

Engineer contract would be awarded to the partnership (Par. 24).

That Gilboy would wilfully and knowingly make and cause to be made false, fictitious and fraudulent statements and representations to the Department and the Corps of Engineers of and concerning the true quantity of earth to be removed in preparation of the ground site (Par. 25); based thereon Rochez would obtain and be awarded a contract in the name of Rochez Bros. Inc. for grading and drainage of said ground site (Par. 26); whereas it was in fact a joint venture between Rochez Bros. Inc. and M. & S. Construction Co. (Par. 27); that Rochez, acting through Specialty Steel Products Inc. would make and tender a contract ostensibly to Gilboy and O'Malley, Consulting Engineers Inc., for industrial engineering services (for a stated consideration) but in fact to Gilboy, acting for and on behalf of the United States as Architect-Engineer with intent to influence his decisions and actions in his official capacity and to influence him to commit and aid in committing and colluding in and allowing fraud, to make opportunity for the commission of fraud on the United States, and induce him to do and omit to do acts in violation of his lawful duty as Architect-Engineer (Par. 28); that Gilboy and Stopper would aid and abet Rochez to obtain modifications in the Rochez Bros. Inc. contract, resulting in large additional compensation to the benefit and profit of Rochez (Par. 29).

That defendants would require and compel Consolidated, Mastriani, Harris and Weinberg to designate Green as agent for required surety bonds, covering contracts and subcontracts in which the United States was directly and indirectly interested, thereby assuring that Green would receive commissions thereon regardless of by whom the business was obtained (Par. 30).

That the defendants and co-conspirators: would obtain the subcontract for Raff (Par. 31); would not take any action to secure compliance with specifications and truly report to the Corps of Engineers the results of inspections made of the work performed by Raff (Par. 32); would from time to time purchase supplies and equipment from John P. Gilboy Inc., Ralph E. Weeks Co. of Delaware and DuRoss-Anderson Co. (Par. 33).

That defendants and co-conspirators would not take any action to secure compliance with specifications and truly report conditions and the state of completion of work performed by John B. Kemmel Inc., and thereby aid and abet said corporation in fraudulently obtaining partial payments on its contracts, to which it was not entitled (Par. 34).

That the defendants and co-conspirators would from time to time corruptly give money and other things of value to Congressman Green with intent to influence his action on any question, matter, cause and proceeding which may at any time be pending before the Armed Services Committee, of which he was a member, and which by law may otherwise be brought before him in his capacity as such member, and that such payments would be disguised and concealed in the donor's and payer's books and records so as not to truly reflect the donee and payee thereof, nor the purpose of such gift and payment (Par. 35); that in order to further conceal such corrupt payments, Herbert J. McGlinchey acted as emissary and go-between for the collection and delivery thereof and for this purpose McGlinchey, individually and also under his trade names of Herbert J. McGlinchey Associates, Manufacturers Sales and Equipment Co., Manufacturers Sales Co., and Manufacturers Sales and Service Co. were also to be placed upon the singular payrolls or expense accounts of the singular defendants and co-conspirators and to receive the payments for which McGlinchey rendered no other services (Par. 36).

That defendants and co-conspirators would from time to time bring the prestige, weight and influence of defendant Green's congressional office and his Armed Services Committee membership to bear upon the representatives, agents and employees of the Department and the Corps of Engineers, to promote the interests, ends and desires of said defendants and co-conspirators in relation to the aforesaid contracts and other matters and things that were and would be pending before them (Par. 37).

8. (1) Gilboy and Stopper filed: On January 16, 1951, an Architect-Engineer Questionnaire and accompanying papers making false representations as to the names of associate members of the Firm, of Key Personnel and "Present Activities" on which their firms were Architect or Engineer of record; (2) on January 29, 1951, a false and fraudulent statement as to the personnel of Gilboy, O'Malley and Stopper. (3) On March 5, 1951, they obtained an Architect-Engineer contract for $575,000.00 in services; an option for additional services including supervisory inspections for an

estimated $281,250 was exercised on July 27, 1951.

(4) On May 27, 1951, Gilboy falsely represented to the Corps of Engineers the estimated quantity of excavation necessary for site preparation to be 2,964,000 cubic yards when he well knew the actual estimate of Gilboy, O'Malley and Stopper was 3,517,039 cubic yards; (5) June 20, 1951, Rochez Bros. Inc. obtained its contract. (6) August 1, 1951, the corporation knew there was more earth to be excavated than was shown on the bidding documents and contract. (7) That same day at the Depot Rochez informed Gilboy as to the Specialty Steel Products Inc. contract, thereafter awarded ostensibly to Gilboy and O'Malley, Consulting Engineers Inc. (8) December 26, 1951, Rochez appealed under the "Dispute Clause" from the decision of the Contracting Officer of the Corps of Engineers on the issue of the large overrun of earth work at the Depot; (9) Beginning December 20, 1951, and thereafter, Specialty Steel Products Inc. paid Gilboy, O'Malley and Stopper under phase I of the contract, supra, the sum of $6,-203.78; (10) on January 27, 1953, after redetermination by the government and a refund by Gilboy of $6,657.77 Specialty Steel Products Inc. paid under phase II of the contract to Gilboy and O'Malley, Contracting Engineers, $29,468.39.

(11) July 1951, Green told Gilboy there would be a lot of bonds at the Depot and that he wanted to get them; (12) November 30, 1951, Brown received from the American Surety Co. two surety bonds—$2,335,022.50 and $1,-868,018—required by the Consolidated Construction Co. contract, premium $36,-644.25. (13) December 17, 1951, Brown requested the Surety Company to credit the bonds to Green as broker at 30% commission instead of the regular 20% rate, stating that Green was a member of the Armed Services Committee and in a position to be helpful to Consolidated in the completion of its contract. (14) May 14, 1952, Green received the $36,644.25 in premiums, deducted 30% or $10,993.27 as commission and remitted the balance to the surety company. (15) January 22, 1952, Gilboy advised Weinberg that he should place his surety bond—$183,866, premium $1338.-66—obtained through another broker, with Green so that Green would obtain the commission; (16) April 30, 1952, Weinberg paid the American Surety Co. the premium; May 22, 1952, they in turn paid Green a commission of $401.60.

(17) May 26, 1952, Gilboy directed that the commission on the Harris surety bond—$421,000.00, premium $4210.00—would have to be paid to Green instead of to the broker that actually obtained the business; (18) July 12, 1952, the American Surety Co. paid the commission, $1263.00, to Green. (19) August 19, 1955, the American Associated Companies paid $221.10 to Green as a commission on a surety bond covering one of the S. G. Mastriani Company contracts. (20) October 30, 1952, John B. Kemmel paid Green $1000.00, noted on the company's books as advertising expense. (21) August 21, 1953, Green interceded with the District Engineer for the purpose of having the Corps of Engineers resolve differences claimed by John B. Kemmel Co. to be in excess of subcontract requirements and prime contract specifications.

(22a) From September 16, 1952, to August 26, 1954, John B. Kemmel Co. paid McGlinchey various sums of money noted on its books as professional fees and miscellaneous expenses.

(22b) July 24, 1953, at Green's request to Gilboy, McGlinchey was put on the payroll of Gilboy, O'Malley and Stopper.

(23) June 1, 1952, at Scranton, Raff asked Gilboy to intercede with Merritt, Chapman and Scott to obtain for Raff the plumbing and heating subcontract. Gilboy said he would be glad to do so. (24) June 15, 1952, Gilboy told E. R. Clement to inform Raff not to place any subcontracts or material orders until after Gilboy talked to him; (25) next day Raff obtained the subcontract. (26) July 15, 1952 Raff said to Gilboy, " * * we have a sum of money put aside on these Government jobs for the military people and architects and engineers to use at their discretion, and if you don't want it, is there some place where it can be put?" (27) October 15, 1952, Green asked Gilboy about sources of funds; Gilboy told of Raff's offer; Green asked Gilboy to contact Raff and find out if the money was still available.

(28) October 15, 1952, Gilboy phoned Raff that he needed some money urgently, asked if the proposition still held; Raff stated he would be glad to keep faith. Gilboy asked for $10,000, Raff said that was "pretty stiff" but he would send a check next morning; Gilboy said he didn't want a check, cash would be better. (29) October 17, 1952, Raff, McGlinchey and Gilboy met at Tobyhanna and arranged for McGlinchey to pick up the money at Hartford. (30) October

The Federal Rules of Criminal Procedure designed to eliminate technicalities in criminal pleading and to be construed to secure simplicity in procedure (see Rule 2) provide in Rule 7(c), "The indictment * * * shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * It need not contain * * * any other matter not necessary to such statement." See United States v. Debrow, 1953, 346 U.S. 374, at page 376, 74 S.Ct. 113, 98 L.Ed. 92; United States v. Achtner, 2 Cir., 1944, 144 F.2d 49, at page 51; United States v. Amorosa, 3 Cir., 1948, 167 F.2d 596, at page 598; United States v. Martinez, D.C.M.D.Pa.1947, 73 F.Supp. 403, at pages 406–407; Berger v. United States, 1935, 295 U.S. 78, at page 82, 55 S.Ct. 629, 79 L.Ed. 1314. United States v. Debrow, supra, cites with approval from Hagner v. United States, 1932, 285 U.S. 427, at page 431, 52 S.Ct. 417, 419, 76 L.Ed. 861, "The true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for a similar offense, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.' Cochran and Sayre v. United States, 157 U.S. 286, 290, 15 S.Ct. 628, 630, 39 L.Ed. 704; Rosen v. United States, 161 U.S. 29, 34, 16 S.Ct. 434 [435], 480, 40 L.Ed. 606." And see United States v. Crummer, 10 Cir., 1945, 151 F.2d 958, 962; United States v. Michener, 3 Cir., 1945, 152 F.2d 880, at page 886.

■ An indictment charging a conspiracy ordinarily is sufficient if it follows the language of the statute and contains a sufficient description of the object of the conspiracy and a sufficient statement of an overt act to effect the object of the conspiracy. Madsen v. United States, 10 Cir., 1947, 165 F.2d 507, at page 510, and see United States v. Amorosa, supra, 167 F.2d at page 598;[9] Jelke v. United States,

20, 1952, Raff caused his check for $10,000 to be cashed—$20 bills wrapped in a brown envelope; (31) and turned it over to McGlinchey at the airport in Hartford. (32) October 23, 1952, Green told Gilboy "to thank Mr. Raff"; (33) that same day, to conceal the real purpose thereof, Raff caused an entry to be made on his books, and a supporting voucher purporting to have been received on October 17, 1952, from Gilboy prepared, indicating that the amount was in payment of "Re engineering services, J. C. Gilboy-Tobyhanna project". (34) Prior thereto, to wit, on September 22, 1952, the Corps of Engineers informed Gilboy, O'Malley and Stopper that defective work had been carried on in the presence of field personnel.

(35) September 30, 1952, in violation of contract specifications Raff improperly laid pipe upon a faulty bed; (36) and on various dates, and specifically December 9, 1952, and December 18, 1952, despite prior objections by the inspectors that the method was in violation of contract specifications, laid pipe upon wood blocks.

(37) Pursuant to Raff's instructions, October 12, 1952, his employees purchased $14,406 of supplies and equipment necessary to fulfill the Raff contract at the Depot from J. P. Gilboy Co.; (38) on April 13, 1953, under similar circumstances, $8,166.50 from Ralph E. Weeks Co.; (39) and on April 30, 1953, $6,207.64 from DuRoss-Anderson Co.

9. As to "intentionally" see Id., quoting from Madsen v. United States, Rosen v. United States, 1896, 161 U.S. 29, at page 33, 16 S.Ct. 434, 40 L.Ed. 606; Rumely v. United States, 2 Cir., 1923, 293 F. 532, at page 547; Frohwerk v. United States, 1919, 249 U.S. 204, 209, 39 S. Ct. 249, 63 L.Ed. 561; Cramer v. United States, 1945, 325 U.S. 1, at page 31, 65 S.Ct. 918, 89 L.Ed. 1441; Screws v. United States, supra, 325 U.S. at page 96, 65 S.Ct. at page 1032, citing Ellis v. United States, 1907, 206 U.S. 246, at page 257, 27 S.Ct. 600, 51 L.Ed. 1047, and see United States v. Patten, 1913, 226 U.S. 525, at page 543, 33 S.Ct. 141, 57 L.Ed. 333; Pinkerton v. United

7 Cir., 1918, 255 F. 264, at pages 275, 276–279; Rudner v. United States, 6 Cir., 1922, 281 F. 516, at page 518; Hill v. United States, 4 Cir., 1930, 42 F.2d 812, at page 814; Caywood v. United States, 9 Cir., 1956, 232 F.2d 220, 224; Potter v. United States, 1894, 155 U.S. 438, at page 444, 15 S.Ct. 144, 39 L.Ed. 214. Every element of the offense being set forth in the earlier part of the indictment, there is no necessity of repeating it. Evans v. United States, 1894, 153 U. S. 584, at page 590, 14 S.Ct. 934, 38 L. Ed. 830.

■■ While it is essential to the validity of an indictment that it shall advise the defendant of the nature and cause of the accusation (VI Amend. U. S. Constitution) and provide an ascertainable standard of guilt (V Amend. U. S. Constitution) and see Screws v. United States, 1945, 325 U.S. 91, at page 95, 65 S.Ct. 1031, 89 L.Ed. 1495, "It is well settled that in an indictment for conspiring to commit an offense—in which the conspiracy is the gist of the crime—it is not necessary to allege with technical precision all the elements essential to the commission of the offense which is the object of the conspiracy, Williamson v. United States, 207 U.S. 425, 447, 28 S.Ct. 163, 52 L.Ed. 278, or to state such object with the detail which would be required in an indictment for committing the substantive offense, * * *. In charging such a conspiracy 'certainty to a common intent, sufficient to identify the offense which the defendants conspired to commit, is all that is necessary.' Williamson v. United States, supra, 207 U.S. 447, 28 S.Ct. 171 * * *." Wong Tai v. United States, 1927, 273 U.S. 77, at page 81, 47 S.Ct. 300, at page 301, 71 L.Ed. 545; Thornton v. United States, 1926, 271 U.S. 414, at page 423, 46 S.Ct. 585, 70 L.Ed. 1013.[10]

■ When the object of the conspiracy is the accomplishment of an un-

lawful act, the means by which the unlawful act is to be accomplished need not be set forth, Pettibone v. United States, 1893, 148 U.S. 197, at page 203, 13 S.Ct. 542, 37 L.Ed. 419; Rose v. United States, 9 Cir., 1945, 149 F.2d 755, at page 758, nor are particularity of time, place, circumstances, causes, etc., in stating the manner and means of effecting the object of a conspiracy essential to an indictment. Glasser v. United States, 1942, 315 U.S. 60, at page 66, 62 S.Ct. 457, 86 L.Ed. 680. It is not necessary to set forth matters of evidence. Bannon and Mulkey v. United States, 1895, 156 U.S. 464, at page 469, 15 S.Ct. 467, 39 L.Ed. 494. As to pleading an overt act, Dealy v. United States, 1894, 152 U.S. 539, at page 543, 14 S.Ct. 680, 38 L.Ed. 545; Goldberg v. United States, 5 Cir., 1924, 297 F. 98, at page 101, the indictment is sufficient if one overt act is well pleaded. Onderdonk v. United States, 5 Cir., 1926, 16 F.2d 116; De Lacey v. United States, 9 Cir., 1918, 249 F. 625, 628, L.R.A.1918E, 1011. It need not state how the overt act tended to further the conspiracy. United States v. Westbrook, supra, 114 F.Supp. at page 199; Marron v. United States, 9 Cir., 1925, 8 F.2d 251, 258. Nor is it necessary to allege which of the various ways the government might be defrauded was in the minds of the conspirators, nor that they all were. Crawford v. United States, 1909, 212 U.S. 183, at pages 191–192, 29 S.Ct. 260, 53 L.Ed. 465.

18 U.S.C.A. § 371 provides, "If two or more persons conspire * * * to defraud the United States * * * in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined * * * or imprisoned * * * or both. * * *"

"A conspiracy is a partnership in crime." Pinkerton v. United States, 1946, 328 U.S. 640, at page 644, 66 S.Ct. 1180, at page 1182, 90 L.Ed. 1489. "An

States, 1946, 328 U.S. 640, at page 647, 66 S.Ct. 1180, 90 L.Ed. 1489.

10. As to the cases cited by defendants, see and cf. United States v. Crummer, supra,

151 F.2d at page 958; United States v. Achtner, supra, 144 F.2d 49; United States v. Westbrook, D.C.Ark.1953, 114 F.Supp. 192, at page 198.

agreement to commit a crime or to engage in criminal activities attended by one or more overt acts." Duke v. United States, 1956, 5 Cir., 233 F.2d 897, at page 900. And see United States v. Perlstein, 3 Cir., 1942, 126 F.2d 789, at page 794. "* * * a combination of two or more persons, by concerted action, to accomplish a criminal or unlawful purpose, or some purpose not in itself criminal or unlawful, by criminal or unlawful means * * *." Pettibone v. United States, supra, 148 U.S. at page 203, 13 S.Ct. at page 545; Duplex Printing Press Co. v. Deering, 1921, 254 U.S. 443, at page 465, 41 S.Ct. 172, 65 L.Ed. 349, 16 A.L.R. 196; Marino v. United States, 9 Cir., 1937, 91 F.2d 691, at page 693, 113 A.L.R. 975.

A conspiracy is constituted by an agreement, i. e., the result thereof, not the agreement itself. It need not be explicit or in writing. It may be implicit. "Not the form or manner in which the understanding is made, but the fact of its existence and the further one of making it effective by overt conduct are the crucial matters." Direct Sales Co. v. United States, 1943, 319 U.S. 703, at page 714, 63 S.Ct. 1265, at page 1270, 87 L.Ed. 1674, and see Wright v. United States, 5 Cir., 1901, 108 F. 805, at pages 808, 810; United States v. Armour & Co., 10 Cir., 1943, 137 F.2d 269, at page 270; United States v. Anderson, 7 Cir., 1939, 101 F.2d 325, at page 330. It is not essential that the precise person, time and place or precise methods be agreed upon. Williamson v. United States, supra, 207 U.S. at page 449, 28 S.Ct. at page 171; Rose v. United States, supra, 149 F.2d at page 758.

Evidence to prove it need not be direct; it may be and usually is circumstantial. American Tobacco Co. v. United States, 1946, 328 U.S. 781, at page 809, 66 S.Ct. 1125, 90 L.Ed. 1575.

It is not necessary that all defendants come into it at one time or that they should all know each other, the complete and exact scope of the conspiracy or all of its ramifications, Marino v. United States, supra, 91 F.2d at

page 696; Blumenthal v. United States, 9 Cir., 1946, 158 F.2d 883, at page 888; Duke v. United States, supra, 233 F.2d at pages 900–901; United States v. Weinberg, D.C.M.D.Pa.1955, 129 F.Supp. 514, at page 524, affirmed 3 Cir., 1955, 226 F. 2d 161; United States v. Cohen, 3 Cir., 1952, 197 F.2d 26, at pages 28, 29; United States v. Perlstein, supra, 126 F.2d 789; United States v. Harrison, 3 Cir., 1941, 121 F.2d 930, at page 933; Lefco v. United States, 3 Cir., 1934, 74 F.2d 66, at page 68; Poliafico v. United States, 6 Cir., 1956, 237 F.2d 97, at pages 103, 106; that all contribute alike either to the making of the scheme or its fulfillment. It is enough if at some time during the continuance of the conspiracy there is a common design and purpose applicable to all. Wellman v. United States, 6 Cir., 1955, 227 F.2d 757, at page 768. When men enter into an agreement for an unlawful end they become ad hoc agents for one another. What one does pursuant to their common objective all do. Van Riper v. United States, 2 Cir., 1926, 13 F.2d 961; United States v. Harding, 1936, 65 App.D.C. 161, 81 F.2d 563, 567; United States v. U. S. Gypsum Co., 1948, 333 U.S. 364, at page 393, 68 S.Ct. 525, 92 L.Ed. 746; cf. Delli Paoli v. United States, 1957, 352 U.S. 232, at page 237, 77 S.Ct. 294, 1 L. Ed.2d 278; Delaney v. United States, 1924, 263 U.S. 586, 44 S.Ct. 206, 68 L.Ed. 462. "The fact that certain types of fraudulent practices occurred during one period and other types at different periods is without significance." Nye & Nissen v. United States, 1949, 336 U.S. 613, at page 617, 69 S.Ct. 766, at page 769, 93 L.Ed. 919. It may be that the success of one venture depends upon the success of the whole. United States v. Cohen, supra, 197 F.2d at page 28, and see Blumenthal v. United States, 1947, 332 U.S. 539, at page 556, 68 S.Ct. 248, 92 L.Ed. 154.

Once a conspiracy is clearly established, slight evidence may be sufficient to connect a defendant with it. United States v. Cohen, supra, 197 F.2d at page 29. Once proved the conspiracy

454

must be deemed to continue until the contrary is established. United States v. Perlstein, supra, 126 F.2d at page 798; Hyde v. United States, 1912, 225 U.S. 347, 367, 370, 32 S.Ct. 793, 56 L.Ed. 1114. As to withdrawal, see Pinkerton v. United States, supra, 328 U.S. at page 646, 66 S.Ct. at page 1183, 90 L.Ed. 1489; United States v. Kissel, 1910, 218 U.S. 601, at page 606, 31 S.Ct. 124, 54 L.Ed. 1168; Marino v. United States, supra, 91 F.2d at page 696; United States v. Cohen, supra, 197 F.2d at page 29.

Those having no knowledge of the conspiracy are not conspirators. United States v. Falcone, 1940, 311 U.S. 205, 210, 61 S.Ct. 204, 85 L.Ed. 128; cf. Direct Sales Co. v. United States, supra, 319 U.S. at pages 711, 713, 63 S.Ct. at pages 1269, 1270. An intention to become a party must be predicated upon some affirmative action. United States v. Harrison, supra, 121 F.2d at page 933. If one has knowledge of the conspiracy and with that knowledge intentionally does some act or thing in furtherance thereof he may be held liable. Duke v. United States, supra, 233 F.2d at page 901; cf. Interstate Circuit Inc., v. United States, 1939, 306 U.S. 208, at page 220, 59 S.Ct. 467, 83 L.Ed. 610; Martin v. United States, 10 Cir., 1938, 100 F.2d 490, at page 495, and cf. Canella v. United States, 9 Cir., 1946, 157 F.2d 470. If so, he adopts as his own the past and future acts of all his conspirators. United States v. Anderson, supra, 101 F.2d at pages 332, 333.

The purpose of § 371 is to protect the government from impositions through conspiracy to cheat and defraud in respect of its rights and privileges, operations and functions, as well as in respect of its property. It prohibits a conspiracy " 'to defraud the United States in any manner or for any purpose' ". United States v. Keitel, 1908, 211 U.S. 370, at page 393, 29 S.Ct. 123, at page 130, 53 L.Ed. 230; Heald v. United States, 10 Cir., 1949, 175 F.2d 878, at page 880; United States v. Weinberg, supra, 129 F.Supp. at pages 523, 524;

Id., 226 F.2d at page 167, and cases cited. "The indictment charges that the United States was defrauded by depriving it of its lawful governmental functions by dishonest means; it is settled that this is a 'defrauding' within the meaning of the * * * Criminal Code. Hammerschmidt v. United States, 265 U.S. 182 [at pages 185, 188], 44 S.Ct. 511, 68 L.Ed. 968." Glasser v. United States, supra, 315 U.S. at page 66, 62 S.Ct. at page 463. See Nye & Nissen v. United States, supra, 336 U.S. at page 617, 69 S.Ct. at page 768; Crawford v. United States, supra, 212 U.S. at pages 191, 192, 29 S.Ct. at pages 262, 263; United States v. Gilliland, 1941, 312 U.S. 86, at page 92, 61 S.Ct. 518, 85 L.Ed. 598.

As to the distinction between a charge of conspiracy and the object thereof, see United States v. Anthony, D.C.M.D.Pa.1956, 145 F.Supp. 323, at page 329, and cases cited. Neither a multiplicity of objects nor of means convert a single conspiracy into more than one offense. "The conspiracy is the crime, and that is one however diverse its objects." Frohwerk v. United States, supra, 249 U.S. at page 210, 39 S.Ct. at page 252, 63 L.Ed. 561. A single agreement to commit an offense does not become several conspiracies because it continues over a period of time. Braverman v. United States, 1942, 317 U.S. 49, at page 52, 63 S.Ct. 99, 87 L.Ed. 23.

One overt act by one of the conspirators to effect the object of the conspiracy is sufficient. Marino v. United States, supra, 91 F.2d at pages 694–695; Braverman v. United States, supra, 317 U.S. at page 53, 63 S.Ct. at page 101. It then becomes the act of all. Marron v. United States, supra, 8 F.2d at page 257.

If the purpose is unlawful it may not be carried out even by means that otherwise would be legal. Duplex Printing Press Co. v. Deering, supra, 254 U.S. at page 465, 41 S.Ct. at page 176. It therefore need not itself be a crime; still less the very crime that is the object of the conspiracy. United

States v. Holte, 1915, 236 U.S. 140, at page 144, 35 S.Ct. 271, 59 L.Ed. 504; United States v. Rabinowich, 1915, 238 U.S. 78, at page 86, 35 S.Ct. 682, 59 L. Ed. 1211. It may be a wholly innocent act. American Tobacco Co. v. United States, supra, 328 U.S. at page 809, 66 S.Ct. at page 1138, 90 L.Ed. 1575. An innocent act by a third party if caused by the previous act or conduct on the part of one of the conspirators would be enough. United States v. Johnson, 3 Cir., 1947, 165 F.2d 42, at page 45; Hyde v. United States, 1912, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114. A particular defendant need not commit an overt act within the district. Bannon and Mulkey v. United States, 1895, 156 U.S. 464, at page 468, 15 S.Ct. 467, 39 L.Ed. 494. An overt act of one conspirator may be the act of all without any new agreements specifically directed to that act. Pinkerton v. United States, supra, 328 U.S. at pages 646–647, 66 S. Ct. at pages 1183–1184. It must however be done in furtherance of the conspiracy. Rose v. United States, supra, 149 F.2d at page 758; cf. Canella v. United States, supra, 157 F.2d 470, at page 476. The object need not be attained. Williamson v. United States, supra, 207 U.S. at page 447, 28 S.Ct. at page 170, 52 L.Ed. 278.

Defendants rely heavily upon Kotteakos v. United States, 1946, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557, and see United States v. Johnson, D.C. M.D.Pa.1946, 65 F.Supp. 42; United States v. Johnson, D.C.M.D.Pa.1946, 65 F.Supp. 46, and see Canella v. United States, supra, 157 F.2d at page 470, but see United States v. Johnson, supra, 165 F.2d 42, at page 45, as to a continuing general conspiracy, and see and cf. Id. at page 47. In Kotteakos and in each of the district court opinions in United States v. Johnson, supra, there was a concession by the government not here present. As to Kotteakos, see Blumenthal v. United States, supra, 332 U.S. at pages 547, 556, 557, 558, 559, 68 S.Ct. at pages 251, 256, 257; Nye & Nissen v. United States, supra, 336 U.S. 616–

617, 69 S.Ct. 768; Direct Sales Co. v. United States, supra, 319 U.S. 703, 63 S.Ct. 1265, 87 L.Ed. 1674; Poliafico v. United States, supra, 237 F.2d at page 105; Lefco v. United States, supra, 74 F.2d at page 68; United States v. Cohen, 2 Cir., 1944, 145 F.2d 82, at page 89; United States v. O'Connell, 2 Cir., 1948, 165 F.2d 697, at page 699; United States v. Griffin, 3 Cir., 1949, 176 F.2d 727, 732, and cf. Berger v. United States, supra, 295 U.S. at page 82, 55 S.Ct. at page 630, 79 L.Ed. 1314. And see United States v. Patten, supra, 226 U.S. at page 544, 33 S.Ct. at page 145, 57 L.Ed. 333, " * * * the character and effect of a conspiracy is not to be judged by dismembering it and viewing its separate parts, but only by looking at it as a whole." Duke v. United States, supra, 233 F.2d at page 899, suggests that " * * * where, as here, it is claimed that there was more than one conspiracy charged, the claim cannot be tested by a reading of the indictment, its testing must await the conclusion of the evidence." We cannot speculate on whether the government can sustain the burden of proving the allegations. Id., and see Frohwerk v. United States, supra, 249 U.S. at page 209, 39 S.Ct. 251.

For the purpose of disposing of a motion to dismiss we are limited to the face of the indictment. United States v. Mertine, D.C.D.N.J., 64 F.Supp. 792, 794; United States v. Westbrook, supra, 114 F.Supp. at page 199, and cf. United States v. Lattimore, 1954, 94 U.S. App.D.C. 268, 215 F.2d 847. We must assume all well plead allegations to be true, United States v. Frankfort Distilleries, Inc., 1945, 324 U.S. 293, at page 296, 65 S.Ct. 661, 89 L.Ed. 951; United States v. Jones, 5 Cir., 1953, 207 F.2d 785, 787, and view the indictment as a whole. Dunbar v. United States, 1895, 156 U.S. 185, 190, 15 S.Ct. 325, 39 L.Ed. 390; United States v. Crummer, supra, 151 F.2d at page 962; United States v. Armour & Co., supra, 137 F.2d at page 270; McCoy v. United States, 9 Cir., 1948, 169 F.2d 776, at page 780. Applying those tests in the light of applicable

# 456

law, we find that the indictment sufficiently charges all seven defendants with a violation of § 371, describes the nature of the defrauding, the means by which it was accomplished, and alleges a series of overt acts by the defendants to effect the object thereof. See and cf. May v. United States, 1949, 84 U.S.App. D.C. 233, 175 F.2d 994, at pages 998, 999, 1002, 1004, certiorari denied 338 U.S. 830, 70 S.Ct. 58, 94 L.Ed. 505.

Three defendants direct ninety-seven inquiries and sub-divisions seeking particulars: Raff, 9 as to Pars. 30 to 32, 34 to 37 incl., overt acts, 31 and 34; Green, 49; Rochez, 28, to Par. 23(a), (b), (c), (d), (e), (f), (g); Rochez, 11, to Pars. 24 to 26, 29 to 36 incl.[11] In effect they ask complete discovery of the government's entire case, its supporting proof, evidentiary matter —who, when, what, where, manner and extent, circumstances. Rule 7(f) provides: "The court for cause may direct the filing of a bill of particulars * *" The granting of such a bill is a matter for the court's discretion. Wong Tai v. United States, supra, 273 U.S. at page 82, 47 S.Ct. at page 302, 71 L.Ed. 545; United States v. Kafes, 3 Cir., 1954, 214 F.2d 887, at page 890. "'The purpose * * * is to enable the accused to avoid surprise, and to * * * prepare for trial.'" United States v. Neff, 3 Cir., 1954, 212 F.2d 297, at page 310,[12] and see United States v. Kelly, D.C.Mo. 1950, 10 F.R.D. 191.

The present indictment not only meets the test of Hagner v. United States, supra, 285 U.S. 427, 52 S.Ct. 417, 76 L.Ed. 861, and that of Costello v. United States, 1956, 350 U.S. 359, at page 363, 76 S.Ct. 406, 100 L.Ed. 397, and see Lawn v. United States (Giglio v. United States), 78 S.Ct. 311, 318, "An indictment returned by a legally constituted and unbiased grand jury * * *, if valid on its face, is enough to call for trial of the charge on the merits. The V Amendment requires nothing more"; but is unusually complete and specific,[13] containing an extensive and intensive account of the modus operandi, and spells out thirty-nine overt acts. Defendants are in our judgment sufficiently informed as to the nature of the charge to prepare their defense and to avoid surprise at the trial, as that term is properly understood (see United States v. Greater Kansas City Retail Coal Merchants Ass'n, D.C.W.D.Mo.1949, 85 F.Supp. 503, at page 513; Nye & Nissen v. United States, 9 Cir., 168 F.2d 846, at page 851), and to later plead double jeopardy.

Denial of particulars such as were requested was approved in Wong Tai v. United States, supra, 273 U.S. at page 82, 47 S.Ct. at page 302; Nye & Nissen v. United States, supra, 168 F.2d at page 851, and see Burton v. United States, 202 U.S. 344, at page 372, 26 S. Ct. 688, 50 L.Ed. 1057; Fredrick v. United States, 9 Cir., 1947, 163 F.2d 536, at page 545; Kansas City Star Co. v. United States, 8 Cir., 1957, 240 F.2d 643, 649–650; United States v. Wilson, D.C. Mo.1947, 72 F.Supp. 812, affirmed Klein v. United States, 8 Cir., 1949, 176 F.2d 184; United States v. Greater Kansas City Retail Coal Merchants Ass'n, supra, 85 F.Supp. at pages 508, 509, 512; United States v. Brandt, D.C., 139 F. Supp. 367, at page 369; United States v. Shindler, D.C.S.D.N.Y.1952, 13 F.R.

11. As to Par. 23, see footnote 6; other paragraphs, footnote 7; overt acts, footnote 8.

12. Once obtained it "* * * strictly limits the prosecution to proof within the area of the bill." Id., 212 F.2d at page 309, but cf. Rule 7(f) as to possible amendment in the interest of justice. See and cf. Mulloney v. United States, 1 Cir., 1935, 79 F.2d 566.

13. See and cf. United States v. McCulloch, D.C.N.D.Ind.1947, 6 F.R.D. 559; United States v. Armour & Co., supra, 137 F. 2d at page 270; Duke v. United States, supra, 233 F.2d at page 899; United States v. Debrow, supra, 346 U.S. at page 376, 74 S.Ct. at page 114, 98 L.Ed. 92; Ford v. United States, 1927, 273 U.S. 593, at page 602, 47 S.Ct. 531, 71 L.Ed. 793; Cochran and Sayre v. United States, supra, 157 U.S. at page 290, 15 S.Ct. at page 630, 39 L.Ed. 704.

D. 292; Kempe v. United States, 8 Cir., 1945, 151 F.2d 680, 685; United States v. Doyle, 7 Cir., 1953, 234 F.2d 788. As to earlier cases, e. g., see Singer v. United States, 3 Cir., 1932, 58 F.2d 74; see and cf. United States v. Caserta, 3 Cir., 1952, 199 F.2d 905, at page 910; United States v. Monjar, 3 Cir., 1944, 147 F.2d 916, at page 921; United States v. Kelly, supra, 10 F.R.D. at page 193.

█ As to the Statute of Limitations, see Grunewald v. United States, 1957, 353 U.S. 391, at page 396, 77 S.Ct. 963, at page 970, 1 L.Ed.2d 931, footnote 9, "On September 1, 1954, the statute of limitations was amended to provide for a five-year time limitation period, 68 Stat. 1145, 18 U.S.C. (Supp. III) § 3282 * * *. The amending statute was by its terms made applicable to offenses not barred on its effective date, that is, September 1, 1954 * * *." And see Id., 353 U.S. at pages 396, 397, 77 S.Ct. at page 970, " * * * where substantiation of a conspiracy charge requires proof of an overt act, it must be shown both that the conspiracy still subsisted within the * . * * (period) prior to the return of the indictment, and that at least one overt act in furtherance of the conspiratorial agreement was performed within that period." And see United States v. Kissel, 1910, 218 U.S. 601, at page 607, 31 S.Ct. 124, 54 L.Ed. 1168. The date of the offense charged in the present indictment was from on or about January 1, 1951, up to and including the date of the indictment, December 14, 1956. An overt act as of August 19, 1955, is pleaded. United States v. Kurzenknabe, D.C.N.J.1955, 136 F.Supp. 17, at page 23; Moyer v. Brownell, D.C.E.D.Pa.1956, 137 F.Supp. 594, at page 607; United States v. Waggener, D.C.D.Colo.1956, 138 F.Supp. 107, 108.

█ As to jurisdiction and venue, see 18 U.S.C.A. § 3237; Brown v. Elliott, 1912, 225 U.S. 392, 32 S.Ct. 812, 56 L.Ed. 1136; Hyde v. United States, supra, 225 U.S. 347, 32 S.Ct. 793, 56 L.Ed. 1114. Venue may be laid in any district in which any act in furtherance of the conspiracy is committed by any of the conspirators. United States v. Cohen, supra, 197 F.2d at page 28; Krogmann v. United States, 6 Cir., 1955, 225 F.2d 220, at page 227; United States v. Brandt, D.C.N.D.Ohio 1955, 139 F.Supp. 367, 369; United States ex rel. Kranz v. Humphrey, 3 Cir., 1949, 174 F.2d 741, at page 742. As to cases where a member of Congress is a defendant, see Burton v. United States, 1905, 196 U.S. 283, 25 S.Ct. 243, 49 L.Ed. 482; Burton v. United States, 1906, 202 U.S. 344, 26 S.Ct. 688, 50 L.Ed. 1057; Williamson v. United States, 1908, 207 U.S. 425, 28 S.Ct. 163, 52 L.Ed. 278; United States v. Quinn, D.C.E.D.N.Y.1953, 111 F.Supp. 870; Id., D.C., 116 F.Supp. 802; May v. United States, supra, 175 F.2d 994.

█ Defendant Gilboy's unsupported allegations as to publicity surrounding the Grand Jury inquiry are without merit in fact or law. See and cf. United States v. Nunan, 2 Cir., 1956, 236 F.2d 576, at page 593.

█ Duplicity in criminal pleading is the joinder of two or more separate and distinct offenses in the same count, not the charging of a single offense involving multiple objects. United States v. Crummer, supra, 151 F.2d at page 963; Frankfort Distilleries, Inc. v. United States, 10 Cir., 1944, 144 F.2d 824, at page 832. The indictment is not duplicitous. Frohwerk v. United States, supra, 249 U.S. at page 210, 39 S.Ct. at page 252, 63 L.Ed. 561; Joplin Mercantile Co. v. United States, 1915, 236 U.S. 531, at page 548, 35 S.Ct. 291, 59 L.Ed. 705.

█ As to severance, see Fed.Rules Crim.Proc., Rule 14; Stilson v. United States, 1919, 250 U.S. 583, at page 585, 40 S.Ct. 28, 63 L.Ed. 1114; Dauer v. United States, 10 Cir., 1951, 189 F.2d 343, 344; United States v. Cohen, 2 Cir., 1941, 124 F.2d 164–166; United States v. Cohen, 2 Cir., 1944, 145 F.2d 82, at page 95. In a conspiracy case a severance should not be granted except for strong and cogent reasons. United States v. Brandt, supra, 139 F.Supp. at page 369; a strong showing of prejudice, United States v. Bowman, D.C.D.C.1956, 137 F.Supp. 385, 386, and see Metcalf v.

United States, 6 Cir., 1952, 195 F.2d 213, at page 217; Poliafico v. United States, supra, 237 F.2d at page 112; Duke v. United States, supra, 233 F.2d at page 900; Hall v. United States, 1948, 83 U.S.App.D.C. 166, 168 F.2d 161, 163, 4 A.L.R.2d 1193. We find no meritorious reason for granting such motion in this case.

■ Only one defendant requested a transfer of trial. See Rule 19. There are no divisions in this district, 28 U.S. C.A. § 118(b). Taking into consideration the physical facilities, i. e., the court room, library, availability of records, and the convenience of all parties concerned, such a request must be denied.

■ Since the scope of our examination is restricted to the indictment itself, we do not stop to compare the indictment to No. 12879 in which defendants Raff and Gilboy are charged with violation of 18 U.S.C.A. §§ 201, 202 (Bribery) and 371. See Thompson v. United States, 9 Cir., 1913, 202 F. 401, at page 404, 47 L.R.A.,N.S., 206; Haas v. Henkel, 1910, 216 U.S. 462, at page 474, 30 S.Ct. 249, 54 L.Ed. 569 (two indictments for the same offense). As to possible variance or conflict, see Pearlman v. United States, 9 Cir., 1927, 20

F.2d 113, 114. As to variety of statements, see Dealy v. United States, supra, 152 U.S. at page 542, 14 S.Ct. at page 681, 38 L.Ed. 545; United States v. Maryland State Licensed Beverage Ass'n Inc., 4 Cir., 1957, 240 F.2d 420, 421. "While a prosecution for one conspiracy is no bar to a prosecution for participation in another, a single conspiracy cannot be split up for the purpose of prosecution." United States v. Cohen, supra, 197 F.2d at page 29, "It is only an identity of offenses which is fatal." Pinkerton v. United States, supra, 328 U.S. at page 644, 66 S.Ct. at page 1182, 90 L.Ed. 1489, and see United States v. Wills, 3 Cir., 1929, 36 F.2d 855.

■ Five days after the hearings in "In the Matter of John Doe" started,[14] the Grand Jury on April 9, 1956, requested and received permission to make an "on the spot inspection of the Depot".[15] They were instructed that they could ask questions of anyone consistent with their obligation as to the secrecy of their proceedings, suggesting the wisdom of calling any possible witnesses to appear before them in the Grand Jury room. The United States Marshal provided transportation and, a discreet distance away, saw that they were not molested. Before

14. See Dession, 42 Yale L.Jnl. 163, 189–190; Hale v. Henkel, 1906, 201 U.S. 43, 61, 65, 26 S.Ct. 370, 50 L.Ed. 652; Hendricks v. United States, 1912, 223 U.S. 178, at page 184, 32 S.Ct. 313, 56 L.Ed. 394.

15. Unusual, but see Hurtado v. People of State of California, 1884, 110 U.S. 516, 529–530, 4 S.Ct. 111, 217, 292, 28 L.Ed. 232. We must not deny " * * * every quality of the law but its age, and * * * render it incapable of progress or improvement." Hale v. Henkel, supra, 201 U.S. at pages 59–66, 26 S.Ct. at page 375, " * * * they may act upon knowledge acquired either from their own observations or upon the evidence of witnesses given before them." Id., 201 U.S. 65, 66, 26 S.Ct. 375. Blair v. United States, 1919, 250 U.S. 273, at pages 279–282, 39 S.Ct. 468, 471, 63 L. Ed. 979. "It is a grand inquest, a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of

propriety * * *" Id., 250 U.S. 282, 39 S.Ct. 471. United States v. Thompson, 1920, 251 U.S. 407, at page 413, 40 S.Ct. 289, 292, 64 L.Ed. 333. " * * * the power and duty of the grand jury to investigate is original and complete, susceptible of being exercised upon its own motion and upon such knowledge as it may derive from any source which it may deem proper * * *." It is not "dependent for its exertion upon the approval or disapproval of the court * * *." McGrain v. Daugherty, 1927, 273 U.S. 135, at page 157, 47 S.Ct. 319, at page 323, 71 L.Ed. 580; United States v. Johnson, supra, 319 U.S. 503, at pages 510, 512, 63 S.Ct. at pages 1236, 1237; United States v. Neff, supra, 212 F.2d at page 301; United States v. Smyth, D.C.Cal. 1952, 104 F.Supp. 283; to which we add Costello v. United States, supra, 350 U.S. at pages 361–362, 364, 76 S.Ct. at pages 407–408, 409; United States v. Nunan, supra, 236 F.2d at page 593. And see Powers of Federal Grand Juries, 4 Stan.L.Rev. 68.

they began their investigation the Grand Jurors by use of a scale model or topographical map were given directions by an officer at the Depot as to building layouts and location. Rochez' counsel suggests the name of a newspaper reporter who would, he avers, state that he and others heard or overheard those directions, and requests a hearing to prove that "fact".[16] The government objects, citing United States v. Smyth, D.C.Cal. 1952, 104 F.Supp. 283, and see United States v. Perlstein, 3 Cir., 1941, 120 F. 2d 276, at page 279; United States v. Holmes, 3 Cir., 1948, 168 F.2d 888, at page 890; United States v. Johnson, 319 U.S. 503, at page 513, 63 S.Ct. 1233, 87 L.Ed. 1546; Costello v. United States, supra, 350 U.S. at page 363, 76 S.Ct. at page 408. There is no transcript of what actually occurred.

■ A hearsay assertion inviting inquiry does not overcome the strong presumption of regularity attending Grand Jury proceedings. United States v. Nunan, supra, 236 F.2d at page 594.

The fact, if true, has no bearing upon the guilt or innocence of the accused.[17] Receiving directions for starting their tour of investigation in no way differed from inquiring at a railroad ticket office as to how to get to the point where an investigation was to take place, or receiving instructions in open court as to the manner of conducting their investigation.

■ Defendant Rochez presents a newspaper report that daily copies of

Grand Jury testimony were furnished by the United States Attorney to the Federal Bureau of Investigation; that the Intelligence Division of the Internal Revenue Service was watching developments and would seek permission to review such testimony. If true, that would not support a motion to dismiss an indictment. See and cf. United States v. American Tobacco Co., D.C.W.D.Ky.1910, 177 F. 774, at page 777, and see Proceedings, Institute Federal Rules of Criminal Procedure, New York University School of Law, p. 180; United States v. Smyth, supra, 104 F.Supp. at page 304; In re Grand Jury proceedings, D.C.E.D.Pa. 1933, 4 F.Supp. 283, 284, 285; United States v. United States District Court for Southern Dist. of W. Va., 4 Cir., 1956, 238 F.2d 713; In re April 1956 Term Grand Jury, 7 Cir., 1956, 239 F.2d 263, at page 272.

■ " * * * the giving of testimony and * * * attendance upon court or grand jury in order to testify are public duties which every person * * * is bound to perform upon being properly summoned * * *. The duty, * * * is subject to mitigation in exceptional circumstances; there is a constitutional exemption from being compelled in any criminal case to be a witness against oneself, * * * (see Brown v. Walker, 161 U.S. 591, 16 S.Ct. 644, 40 L.Ed. 819); some confidential matters are shielded from considerations of policy, and perhaps in other cases for special reasons a witness may be excused from telling all that he knows. But,

16. We do not stop to consider the possible application of 18 U.S.C.A. § 1508, or 28 (Pa.) P.S. § 330, nor the cases on the presence of unauthorized persons. See 24 Am.Jur. Grand Jury, § 42, p. 862, Note 4 A.L.R.2d 392, and for a closely analogous situation, see and cf. Snyder v. Commonwealth of Massachusetts, 1934, 291 U.S. 97, at pages 113, 122, 54 S.Ct. 330, 78 L.Ed. 674, 90 A.L.R. 575.

17. See Ex parte Bain, 1887, 121 U.S. 1, at pages 10–12, 7 S.Ct. 781, at page 786, 30 L.Ed. 849. "The institution * * is designed as a means, not only of bringing to trial persons accused of public offenses upon just grounds, but also as

a means of protecting the citizen against unfounded accusation * * *." Id. " * * * 'from an open and public accusation of crime, and from the trouble, expense, and anxiety of a public trial before a probable cause is established * * *.' " Id., 121 U.S. 12, 7 S.Ct. 787. Nor does it matter that the directions were not under oath. See McGrain v. Daugherty, supra; United States v. Smyth, supra, 104 F.Supp. at pages 298, 299; United States v. Johnson, supra, 319 U.S. at page 510, 63 S.Ct. at page 1236; Costello v. United States, supra, 350 U.S. at page 362, 76 S.Ct. at page 408.

aside from exceptions and qualifications —and none such is asserted in the present case—the witness is bound not only to attend but to tell what he knows in answer to questions framed for the purpose of bringing out the truth of the matter under inquiry." Blair v. United States, supra, 250 U.S. at pages 281, 282, 39 S.Ct. at page 471; United States v. Neff, supra, 212 F.2d at page 302. A grand jury that begins an investigation " * * * opens up all the ramifications of the particular field of inquiry * * * " United States v. Neff, Id. at page 301; United States v. Johnson, supra, 319 U.S. at page 512, 63 S.Ct. at page 1237. A witness " * * * is not entitled to set limits to the investigation that the grand jury may conduct * * * examination of witnesses * * * need not be preceded by a formal charge against a particular individual. Hale v. Henkel, 201 U.S. 43, 65, 26 S.Ct. 370, 50 L.Ed. 652 * * * a body with powers of investigation and inquisition, the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime. * * * the identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. Hendricks v. United States, 223 U.S. 178, 184, 32 S.Ct. 313, 56 L.Ed. 394." Blair v. United States, 250 U.S. at page 282, 39 S.Ct. at page 471; United States v. Neff, 212 F.2d at pages 301, 302; Cobbledick v. United States, 1940, 309 U.S. 323, at page 327, 60 S.Ct. 540, 84 L.Ed. 783; Frisbie v. United States, 1895, 157 U.S. 160, 163, 15 S.Ct. 586, 39 L.Ed. 657; Hale v. Henkel, 201 U.S. 63, 65, 26 S.Ct. 374, 375, and see Post v. United States, 1896, 161 U.S. 583, 587, 16 S.Ct. 611, 40 L.Ed. 816. It was not for the prosecuting attorney to say what the scope of the investigation was. See Rogers v. United States, 10 Cir., 1950, 179 F.2d 559, at page 563; Id., 340 U.S. 367, at page

380, 71 S.Ct. 438, 95 L.Ed. 344; Hooley v. United States, 1 Cir., 1954, 209 F.2d 234, 235.

■ The V Amendment declares "No person * * * shall be compelled in any criminal case to be a witness against himself * * *." See discussion in Twining v. State of New Jersey, 1908, 211 U.S. 78, at pages 91–113, 29 S.Ct. 14, 53 L.Ed. 97. An investigation by a grand jury is a criminal case. Counselman v. Hitchcock, 1892, 142 U.S. 547, at pages 562, 563, 12 S.Ct. 195, 35 L.Ed. 1110.

■ The government is not obliged to refrain from asking questions, the answers to which may be incriminating. United States v. Neff, supra, 212 F.2d at page 312. "The amendment speaks of compulsion. It does not preclude a witness from testifying voluntarily in matters which may incriminate him. If, * * * he desires the protection of the privilege, he must claim it or he will not be considered to have been 'compelled' within the meaning of the Amendment." United States v. Monia, 1943, 317 U.S. 424, at page 427, 63 S.Ct. 409, 410, 87 L.Ed. 376, and see 317 U.S. at pages 432, 433, 63 S.Ct. at page 413; United States ex rel. Vajtauer v. Commissioner of Immigration, 1927, 273 U.S. 103, 113, 47 S.Ct. 302, 71 L.Ed. 560. "The privilege 'is deemed waived unless invoked.' United States v. Murdock, 1931, 284 U.S. 141, 148, 52 S.Ct. 63, 64, 76 L.Ed. 210." Rogers v. United States, 1951, 340 U.S. 367, at page 371, 71 S.Ct. 438, 440, 95 L.Ed. 344; Brown v. Walker, 1896, 161 U.S. 591, at page 597, 16 S.Ct. 644, 40 L.Ed. 819.

As to the distinction between the privilege of any witness not to give incriminating answers and the right of the accused not to take the stand in a criminal prosecution against him, see United States v. Housing Foundation of America, Inc., 3 Cir., 1949, 176 F.2d 665, 666. In a trial a person charged with the commission of an offense "shall, at his own request, but not otherwise, be a competent witness. And his failure to make such request shall not create any pre-

sumption against him." 18 U.S.C.A. § 3481. United States v. Scully, 2 Cir., 1955, 225 F.2d 113, 115, 116, certiorari denied 350 U.S. 897, 76 S.Ct. 156, 100 L.Ed. 788, holds that the principle which underlies the rule that a defendant in a criminal trial may refrain even from being sworn as a witness has no application to proceedings before a Grand Jury. And see United States v. Benjamin, 2 Cir., 1941, 120 F.2d 521, 522; Wigmore on Evidence, 3d Ed., § 2268; Mulloney v. United States, supra, 79 F. 2d at page 576; Stanley v. United States, 6 Cir., 1957, 245 F.2d 427, at page 434; Marcello v. United States, 5 Cir., 1952, 196 F.2d 437, at page 441; cf. United States v. Miller, D.C.E.D.Pa. 1948, 80 F.Supp. 979, at page 981; United States v. Lawn, D.C.S.D.N.Y.1953, 115 F.Supp. 674, 677; United States v. Edgerton, D.C.D.Mont.1897, 80 F. 374, 375.

■ The mere possibility that the witness may later be indicted furnishes no basis for requiring that he be advised of his rights under the V Amendment when summoned to give testimony before a Grand Jury. United States v. Scully, supra, 225 F.2d at page 116;[18] United States v. Parker, 7 Cir., 1957, 244 F.2d 943. He was subject to call as a witness and only had the right of any witness to decline to give answers when interrogated, which might tend to incriminate him. United States v. Benjamin, supra, 120 F.2d at page 522; see

Wigmore Id. § 2268. The privilege is "* * * an option of refusal, not a prohibition of inquiry."

While the government may not practice deception, fraud or duress upon an accused to obtain evidence, it is not required to advise him of his rights as to self-incrimination. Wilson v. United States, 1896, 162 U.S. 613, 624, 16 S.Ct. 895, 40 L.Ed. 1090; Powers v. United States, 1912, 223 U.S. 303, at pages 313, 314, 32 S.Ct. 281, 56 L.Ed. 448; Thompson v. United States, 7 Cir., 1926, 10 F.2d 781, at page 784; Knoell v. United States, 3 Cir., 1917, 239 F. 16, at page 21; Mattes v. United States, 3 Cir., 1935, 79 F.2d 127, 128; Nicola v. United States, 1934, 3 Cir., 72 F.2d 780; Pulford v. United States, 6 Cir., 1946, 155 F.2d 944, at page 947. The question is not and should not be subject to any fixed rule. Wigmore, Id. § 2269. The relevant inquiry must always be whether the testimony was freely given, all things considered. United States v. Block, 2 Cir., 1937, 88 F.2d 618, at pages 620, 621; United States v. Neff, 212 F.2d at page 312; United States v. Miller, supra, 80 F.Supp. at page 982; cf. United States v. Johnson, D.C.M.D.Pa.1947, 76 F.Supp. 538, at pages 540, 541. In the present case there is nothing to indicate the testimony was not freely given. Rochez in fact signed a waiver.

The right to discovery in a criminal case before 1946 was doubtful, see Notes

18. The question was raised but went off on another point in Grunewald v. United States, supra, 353 U.S. 391, at pages 418, 422, 77 S.Ct. 963, 1 L.Ed.2d 931. As to the differences between parties and witnesses, see Kiewel v. United States, 8 Cir., 1953, 204 F.2d 1, at page 4; United States v. Scully, D.C. S.D.N.Y.1954, 119 F.Supp. 225, 227; United States v. Klein, D.C.S.D.N.Y. 1954, 124 F.Supp. 476, 478–479; United States v. Haas, D.C.S.D.N.Y.1954, 126 F.Supp. 817, 818; United States v. Klein, 2 Cir., 1957, 247 F.2d 908; United States v. Garnes, D.C.S.D.N.Y.1957, 156 F.Supp. 467, 469; United States v. Price, C.C.S.D.N.Y.1908, 163 F. 904, 906; United States v. Brown, D.C.Or.1871, 24 Fed.Cas. page 1273, No. 14,671, 1 Sawy. 531; United States v. Kimball, C.C.S.D.

N.Y.1902, 117 F. 156, 160, 162, 163; United States v. Burk, D.C.D.Del.1941, 41 F.Supp. 916, at page 918; Kaplan v. United States, 2 Cir., 1925, 7 F.2d 594, at page 597; Com. v. Bolger, 1911, 229 Pa. 597, at pages 601, 602, 79 A. 113; see and cf. Com. v. Bryant, 1951, 367 Pa. 135, 79 A.2d 193, and United States v. Thomas, D.C.W.D.Ky.1943, 49 F.Supp. 547, at pages 549, 550. See and cf. Twining v. State of New Jersey, supra, 211 U.S. at pages 105, 106, 113, 29 S.Ct. at pages 22, 25, and see Cardozo, J. in Palko v. State of Connecticut, 1937, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288; Wigmore Id. § 2251, p. 319, "Courts should unite to keep the privilege strictly within the limits dictated by historic fact, cool reasoning, and sound policy."

Advisory Committee, Rule 16; United States v. Rosenfeld, 2 Cir., 1932, 57 F.2d 74, and, if allowed, was within a restricted area, Carpenter v. Winn, 1911, 221 U.S. 533, 31 S.Ct. 683, 55 L.Ed. 842. A defendant was allowed to examine documents taken from him. United States v. B. Goedde & Co., D.C.E.D. Ill.1941, 40 F.Supp. 523, 534. Under the new civil rules the scope is much broader. The intended scope of Rules 16 and 17(c) was discussed at the Institute Proceedings, supra, at pages 166–168. And see Bowman Dairy Co. v. United States, 1951, 341 U.S. 214, 71 S.Ct. 675, 678, 95 L.Ed. 879. "It was intended by the rules to give some measure of discovery. Rule 16 was adopted for that purpose. It gave discovery as to documents and other materials otherwise beyond the reach of the defendant which, as in the instant case, might be numerous and difficult to identify. The rule was to apply not only to documents and other materials belonging to the defendant, but also to those belonging to others which had been obtained by seizure or process. This was a departure from what had theretofore been allowed in criminal cases." Id., 341 U.S. 218–219, 71 S.Ct. 678. "Rule 16 deals with documents and other materials that are in the possession of the Government and provides how they may be made available to the defendant for his information. In the interest of orderly procedure in the handling of books, papers, documents and objects in the custody of the Government accumulated in the course of an investigation and subpoenaed for use before the grand jury and on the trial, it was provided by Rule 16 that the court could order such materials made available to the defendant for inspection and copying or photographing. In that way, the control and possession of the Government is not disturbed. *Rule 16 provides the only way the defendant can reach such materials so as to inform himself.*" Id., 341 U.S. 219, 71 S.Ct. 678. (Italics supplied.)

"But if such materials or any part of them are not put in evidence by the Government, the defendant may subpoena them under Rule 17(c) and use them himself." Id., 341 U.S. 219, 71 S.Ct. 678.

"There may be documents and other materials in the possession of the Government not subject to Rule 16. No good reason appears * * * why they may not be reached by subpoena under Rule 17(c) as long as they are evidentiary. * * * The court may control the use of Rule 17(c) to that end by its power to rule on motions to quash or modify." Id., 341 U.S. 219, 220, 71 S.Ct. 678.

"It was not intended by Rule 16 to give a limited right of discovery, and then by Rule 17 to give a right of discovery in the broadest terms. Rule 17 provided for the usual subpoena ad testificandum and duces tecum, which may be issued by the clerk, with the provision that the court may direct the materials designated in the subpoena duces tecum to be produced at a specified time and place for inspection by the defendant. Rule 17(c) was not intended to provide an additional means of discovery. Its chief innovation was to expedite the trial by providing a time and place before trial for the inspection of the subpoenaed materials. * * * However, the plain words of the Rule are not to be ignored. They must be given their ordinary meaning to carry out the purpose of establishing a more liberal policy for the production, inspection and use of materials at the trial." Id., 341 U.S. 220, 71 S.Ct. 679. "There was no intention to exclude from the reach of process of the defendant any material that had been used before the grand jury or could be used at the trial. In short, any document or other materials, admissible as evidence, obtained by the Government by solicitation or voluntarily from third persons is subject to subpoena." Id., 341 U.S. 221, 71 S.Ct. 679.

Defendant Gilboy makes 53 requests with sub-divisions for inspection; defendant Green 67; defendant Rochez 21; defendant Raff 25. Each of the four defendants seek a transcript of

their Grand Jury testimony. This request is denied. See United States v. Rose, D.C.M.D.Pa.1953, 113 F.Supp. 775, at page 781. United States v. Rose, 3 Cir., 215 F.2d 617, took a different position in a perjury case. We think, however, the doctrine of United States v. Holmes, 3 Cir., 1948, 168 F.2d 888, at page 890, governs in other cases. See the teaching of Costello v. United States, supra, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397.

In the argument on the motions we suggested and counsel agreed to get together on the problem of inspection, including the subpoenas duces tecum, the motion to quash and impound, all within the framework of Bowman Dairy Co. v. United States, supra, 341 U.S. 214, 71 S.Ct. 675, and see United States v. O'Connor, 2 Cir., 1956, 237 F.2d 466, at page 476. If this approach does not work satisfactorily a definitive order will follow.

Rochez Bros. Inc., Specialty Steel Products Inc., and Consolidated Construction Co. of New Jersey Inc., seek the return of certain books, documents and records in the possession of the government as a result of a subpoena duces tecum or a request and voluntary surrender, during the course of the Grand Jury investigation. The government has advised that all of said materials are necessary for complying with defendants' request for inspection, the government's preparation for and use at the trial, which will be shortly forthcoming. The reasoning of a distinguished jurist in an analogous situation is most pertinent. See United States v. Maryland & Virginia Milk Producers Ass'n, D.C.D.C.1957, 151 F.Supp. 438, Holtzoff, J. If the papers were returned they would be immediately subject to subpoena. The court is unable to perceive that any benefit or advantage would inure by requiring this circumlocution. See United States v. Johnson, 76 F.Supp. at page 542; Bowman Dairy Co. v. United States, supra, 341 U.S. at

page 219, 71 S.Ct. at page 678; United States v. B. Goedde & Co., supra, 40 F. Supp. at page 534. The motion for return will be denied.

Orders in compliance herewith will follow.